NUMBERS 13-05-601-CR


COURT OF APPEALS


 

THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MARIA RAQUEL RIVAS, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 117th District Court of Nueces County, Texas

 


MEMORANDUM OPINION


Before Justices Yañez, Rodriguez, and Garza 


Memorandum Opinion by Justice Garza



 Appellant, Maria Raquel Rivas, was charged by indictment with the offense of capital
murder with a repeat felony offender enhancement. See Tex. Pen. Code Ann. § 12.42(c)(1)
(Vernon Supp. 2006), § 19.02(b)(1) (Vernon 2003), § 19.03(a)(2) (Vernon Supp. 2006). 
Appellant pled not guilty and was convicted after a trial to a jury. She was sentenced to life
imprisonment. Appellant subsequently filed a motion for new trial, which was denied by the
trial court. Appellant now raises seven issues on appeal. We overrule the issues and affirm
the judgment of the trial court. 

I. Factual and Procedural Background

 On March 20, 2004, Corpus Christi Police Officer Billy Browning was called out to
investigate an accident. At the scene of the accident, Browning found a vehicle that had
run into a telephone pole on the side of the road. In the vehicle, Browning discovered Tim
Haynes' bloody body slumped over in the vehicle. (1) Haynes was not breathing. Browning
was unable to get to Haynes because the doors were locked; however, paramedics broke
the glass on the passenger's side of the vehicle to get to Haynes. The paramedics
discovered a puncture wound in Haynes' chest as they performed CPR. Haynes was taken
to a hospital where he was pronounced dead. 

 Lieutenant Rocky Vipond and Detective Curtis Abbot searched Haynes' truck and
found a "still cool," partially-full beer can, a pack of Swisser Sweets cigars (which was
missing one cigar), and a pornographic DVD. Lieutenant Vipond searched the area where
the truck was found and, about 300-350 feet from the truck, he saw a beer laying on the
grass. The beer was the same brand of beer as the one found in Haynes' truck. When
Vipond went to look at the beer, he discovered blood on the street and curb and on the
grass leading up to appellant's apartment. Vipond noticed that appellant's front porch
looked like it had just been washed. Vipond, accompanied by other officers, knocked on
the door, but did not immediately get a response. When they did get a response, appellant
opened the door, but did not let them in. Appellant stated that she knew her rights and her
attorney told her that if police ever showed up, they would need a warrant to get in. While
appellant was talking to the officers, Vipond heard a "thumping" sound. Vipond looked
around and noticed a window screen lying in the bushes and then spotted a man running
across the street and through a yard. The man was not located. (2)
 

 After securing a warrant, the officers searched appellant's apartment. They found
a bucket that smelled like Clorox. Officers also discovered that candle wax and fingernail
polish had been dripped over blood spots on the carpet and on a mattress. Officers
discovered a candle, red nail polish and a half-smoked Swisser Sweets cigar in one of the
bedrooms. Appellant, Janice Ruiz, and Lynette Maxwell were arrested for tampering with
evidence. Appellant cooperated with the arresting officers. She led them to some bloody
clothes and a knife that had been disposed of in the rear trash can of her house and in her
mother's trash bin. Officers found tan pants, a mattress cover, a white sheet, a door mat,
a plastic bag, a white lamp, table lamp, a towel, and a bandana in the trash cans.

 A partial DNA match was found on the knife matching Haynes' blood. Haynes' DNA
was also found on a pair of shorts, a jersey, the white curtain in the trash can, a gauze from
the grass area, on the mattress and mattress cover from a rear bedroom, a living room
cushion, on the tan pants, and on the bandana. A partial DNA match was also found on a
kitchen knife retrieved from the trash can. A sample from the inside of Haynes' shirt
revealed a match for appellant and Leonard Haskins.

 Officer Revis interviewed appellant at the police station. The interview was
videotaped. The videotape of the interview was admitted into evidence at trial without
objection. In the interview, appellant stated that on the night in question, while she was out
walking around midnight, Haynes approached her and her two friends, Janice and Lynette,
and offered them a ride. Haynes allegedly told the women that he "wanted a date." 
Appellant explained this meant Haynes wanted "to have sex," wanted "everything" and they
were "going to do it." When they got to appellant's apartment, they went to the back
bedroom. Haynes took his pants off and all three girls went into the room. However,
appellant left the room to go talk to her boyfriend, Leonard Haskins, and Robert Clay. 
Appellant stated that the next thing she knew, Haskins was wrestling with Haynes. Haynes
was trying to take a knife away from Haskins, but was unable to. During the fight, appellant
saw Haskins stab Haynes, and saw Haskins and Clay continue to beat him up after he was
stabbed. Appellant heard Haynes state, "I'm dying" as he left the apartment. After Haynes
left the apartment, Haskins showed appellant some money he had taken from Haynes. 
Appellant admitted to cleaning up afterwards because she was scared. Haskins took his
bloody clothes off and Janice hid them in a trash can across the street. Appellant denied
knowing what became of the knife. 

 A medical examiner testified that Haynes died of a stab wound to the chest. The
knife penetrated two and a half inches into the chest, went through part of the fifth rib and
went into the heart, such that the victim had no more than thirty minutes before bleeding to
death. 

 Lynette Maxwell testified she was living with appellant and Haskins at the time of the
murder. She testified that appellant's mother had dropped her, appellant, and Janice off
at a store to buy things. On their way home, appellant approached Haynes and started
talking with him, possibly asking for a ride home. They accepted a ride from Haynes. On
the way to appellant's apartment, appellant gave Haynes oral sex. When they got to
appellant's apartment, appellant and Haynes went into Maxwell's room (at the back of the
apartment). Maxwell assumed appellant was going to get money in exchange for sex. 
Maxwell testified she went to the living room and Janice was in the kitchen. Maxwell then
went to the restroom and, on her way out, noticed Haskins and Clay in her room and
appellant in her own room. Maxwell saw Haskins stab Haynes and heard appellant asking
for a knife. She heard Haynes state, "I think I'm dying" and saw him walk out the door. 
After Haynes was stabbed, appellant and Haskins were laughing. Maxwell testified that
Haskins mopped the porch with Clorox, while she and Janice cleaned the room where the
stabbing occurred. Appellant did not clean any of the blood from the apartment. 

 Janice Ruiz testified that, on the night in question, appellant's mother drove them to
the store to buy lottery tickets. She testified that appellant and Maxwell went over to
Haynes' truck to get a ride home for them. On the way home, appellant "did a date" with
Haynes and gave him oral sex. When they got back to appellant's apartment, appellant and
Maxwell went to Maxwell's room because Maxwell was "going to do a date" with Haynes. 
Appellant walked out of the room with money in her hand. Maxwell remained in the room. 
Appellant walked into the room where Haskins and Clay were, then Haskins went into the
room where Haynes was and started fighting with him. Haskins asked for a knife and
Maxwell ran into the kitchen to get one. She heard Haynes yelling, asking for them to let
him go because he was dying. She heard one of the men say, "get the keys" and "he's got
more money . . . get his wallet." Haynes responded, "You already got all my money, let me
go." Ruiz assumed they let Haynes go because things got quiet. Ruiz testified that they
went to appellant's mother's house for dope. After smoking crack, they started cleaning. 
Maxwell used candle wax and nail polish and Haskins cleaned the front porch, but appellant
did not clean. Haskins gave her his bloody clothes to throw away. Ruiz testified Haskins
"ran out the window" when police arrived. 

 Robert Clay testified that on the day of the incident, he went to the apartment where
appellant and her boyfriend, Leonard Haskins, lived. He testified he went over at about five
or six in the afternoon to buy crack from Haskins. He testified that appellant and two other
women went to the store to cash in some lottery tickets. About thirty minutes later, the
women returned with Haynes. While watching television in appellant and Haskins'
bedroom, appellant came to get Haskins and handed him what appeared to be money. 
Clay then exited the bedroom and headed to the restroom. He observed Haynes sitting on
the bed in the back bedroom with his pants down. Clay heard Haskins arguing with Haynes
and heard Haskins ask Haynes what he was doing in his "fucking" house. Haynes
responded that he was invited back for sex. Haskins told Haynes to get out of his house
at which time Haynes pulled his pants back up. Clay turned around to go out the front door
when he heard appellant yell and then he heard a commotion "like something was
breaking." Appellant told Clay to come back and help. However, even before the argument
between Haskins and Haynes began, appellant handed Haskins a knife and tried giving one
to Clay too, but he refused. Clay testified that when Haynes was confronted with the knives,
Haynes said he wanted to "get out of here," that he "didn't have nothing," and that he did
not have any more money. Haskins responded, "Fuck that, I know you're lying. You've got
some more money." Appellant then told Haskins to get Haynes' keys from him. Appellant
asked Haynes where his keys were, but Haynes said he could not find them. Clay testified
that he left the room, but when he returned to break up the argument, Haynes and Haskins
were "tussling" on the floor. Clay got between them and then noticed the blood on Haynes'
shirt. Haskins then changed his clothes and handed them to appellant and also handed the
knife to appellant and told her to wash the blood off. Appellant placed the knife in the sink. 
Appellant and the other girls tried cleaning up. Clay, appellant, and Haskins then went
across the street to appellant's mother's house. While they were there, appellant called for
drugs to be delivered and then upon delivery, proceeded to smoke crack. About twenty
minutes later, they returned to the apartment and continued their clean-up efforts.

 Appellant was subsequently charged and convicted of capital murder with a repeat
felony offender enhancement. She filed a motion for new trial, which the trial court denied. 
This appeal ensued. 

II. Legal Sufficiency 

 By her first issue, appellant challenges the sufficiency of the evidence to support her
conviction for capital murder, specifically claiming there was insufficient evidence to support
the robbery element of that offense. See Tex. Pen. Code Ann. § 19.03(a)(2), § 29.02
(Vernon 2003). Specifically, appellant contends the evidence is legally insufficient to
support her conviction for capital murder committed in the course of committing a robbery
because "the State has failed to prove that [she] ever obtained control over the deceased's
property . . . ." and "failed to prove that [she] gave Haskins any money or that she had any
knowledge that Haskins was going to rob the victim." Appellant contends the State was
required to prove that "[she] knew that Leonard Haskins intentionally stabbed the deceased
with the intent to obtain control of the deceased's property and [she] assisted in the
robbery." 

A. Standard of Review

 In assessing the legal sufficiency of the evidence to support a criminal conviction, we
consider all the evidence in the light most favorable to the verdict and determine whether,
based on that evidence and reasonable inferences therefrom, a rational juror could have
found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 318-19 (1979); Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006);
Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). The reviewing court must
give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony,
to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate
facts." Jackson, 443 U.S. at 318-19; Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App.
2007). 

 In reviewing the legal sufficiency of the evidence, we should look at "events occurring
before, during and after the commission of the offense and may rely on actions of the
defendant which show an understanding and common design to do the prohibited act." 
Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). Each fact need not point
directly and independently to the guilt of the appellant, as long as the cumulative force of
all the incriminating circumstances is sufficient to support the conviction. See Barnes v.
State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); Johnson v. State, 871 S.W.2d 183,
186 (Tex. Crim. App. 1993) ("[i]t is not necessary that every fact point directly and
independently to the defendant's guilt; it is enough if the conclusion is warranted by the
combined and cumulative force of all the incriminating circumstances."); Alexander v. State,
740 S.W.2d 749, 758 (Tex. Crim. App. 1987). Circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can
be sufficient to establish guilt. Guevara, 152 S.W.3d at 49. On appeal, the same standard
of review is used for both circumstantial and direct evidence cases. Id.

 In a criminal conviction, legal sufficiency of the evidence is determined by the
elements of the crime as defined by the hypothetically correct jury charge. Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex.
App.-Corpus Christi 2002, pet. ref'd). The correct charge is one that accurately sets out the
law, is authorized by the indictment, does not unnecessarily increase the State's burden of
proof or unnecessarily restrict the State's theories of liability, and adequately describes the
particular offense for which the defendant was tried. Malik, 953 S.W.2d at 240; Adi, 94
S.W.3d at 131.

B. Applicable Law

 To support appellant's conviction for capital murder, the State was required to prove
that appellant intentionally caused Haynes' death while in the course of committing or
attempting to commit robbery. See Tex. Pen. Code Ann. §§ 19.02(b)(1), 19.03(a)(2), Tex.
Pen. Code Ann. §§ 7.01(a), 7.02(a)(2) (Vernon 2003). (3)
 A person commits robbery if, in the
course of committing theft, he intentionally, knowingly, or recklessly causes bodily injury to
another. Tex. Pen. Code Ann. § 29.02(a)(1). A person commits theft if he unlawfully
appropriates property with intent to deprive the owner of property. Tex. Pen. Code Ann. §
31.03(a) (Vernon Supp. 2006). For the purposes of capital murder, "in the course of
committing" a robbery is defined as conduct occurring in an attempt to commit, during the
commission of, or in the immediate flight after the attempt or commission of the murder. 
McGee v. State, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989). For a murder to qualify as
capital murder under section 19.03, the killer's intent to rob must be formed before or at the
time of the murder. Herrin v. State, 125 S.W.3d 436, 441 (Tex. Crim. App. 2002); Alvarado
v. State, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). Proof of a robbery committed as an
afterthought and unrelated to a murder does not support a conviction for capital murder. 
Alvarado, 912 S.W.2d at 207. However, if there is evidence from which the jury could
rationally conclude beyond a reasonable doubt that the defendant formed the intent to
obtain or maintain control of the victim's property either before or during the commission of
the murder, then the State has proven that the murder occurred in the course of robbery. 
Id.; Robertson v. State, 871 S.W.2d 701, 706 (Tex. Crim. App. 1993). Moreover, in a capital
murder case, if the State proves the robbery occurred immediately after the murder, the
evidence is sufficient to prove the nexus between the murder and the robbery. Cooper v.
State, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002); McGee, 774 S.W.2d at 234. Even in
the absence of additional evidence of a nexus, the robbery of the victim immediately after
the murder is sufficient proof of a nexus. Cooper, 67 S.W.3d at 224. The jury may infer the
requisite intent from the acts, words and conduct of the defendant. Alvarado, 912 S.W.2d
at 207; Robertson, 871 S.W.2d at 706. 

 The jury instructions authorized the jury to convict appellant of capital murder as a
party to the offense. A person is criminally responsible as a party to an offense if the
offense is committed by his own conduct, by the conduct of another for which he is
criminally responsible, or by both. Tex. Pen. Code Ann. §§ 7.01(a), 7.02(a)(2); Vodochodsky
v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). A person is criminally responsible
for an offense committed by the conduct of another if, acting with the intent to promote or
assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to
aid the other person to commit the offense. Tex. Pen. Code Ann. § 7.02(a)(2);
Vodochodsky, 158 S.W.3d at 509.

 Evidence is sufficient to convict a defendant under the law of parties where he is
physically present at the commission of the offense and encourages the commission of the
offense either by words or other agreement. Salinas v. State, 163 S.W.3d 734, 739 (Tex.
Crim. App. 2005) (citing Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)). 
While the presence of an accused at the scene of an offense is not alone sufficient to
support a conviction, it is a circumstance tending to prove guilt, which, combined with other
facts, may suffice to show that the accused was a participant. Beardsley v. State, 738
S.W.2d 681, 685 (Tex. Crim. App. 1987). In determining whether there is sufficient
evidence to convict under the law of parties where the defendant is physically present at the
commission of the offense, the reviewing court may look to events occurring before, during,
and after the commission of the offense, may rely on actions of the defendant that show an
understanding and common design to do the prohibited act, and may use circumstantial
evidence to prove party status. Salinas, 163 S.W.3d at 739 (citing Ransom, 920 S.W.2d
at 302). Further, participation in an enterprise may be inferred from circumstances and
need not be shown by direct evidence. Beardsley, 738 S.W.2d at 684. While flight alone
will not support a guilty verdict, evidence of flight from the scene of a crime is a
circumstance from which an inference of guilt may be drawn. Valdez v. State, 623 S.W.2d
317, 321 (Tex. Crim. App. 1979).

C. Evidence 

 The following relevant evidence was adduced at trial: Clay testified that appellant
told him to come back and help Haskins with Haynes. Before the argument between
Haskins and Haynes began, appellant handed Haskins a knife and tried giving one to Clay
too. Appellant told Haskins to get Haynes' keys from him. Appellant asked Haynes where
his keys were, but Haynes said he could not find them. Appellant assisted Haskins in
disposing of his bloody clothes and in washing the blood off the knife. Maxwell testified that
appellant and Haskins were laughing after Haynes was stabbed. She also testified that
appellant told her not to talk to the police and to say that they did not know anything. 
Maxwell also recalled a conversation with Detective Revis about "baiting" Haynes back to
the house when they were at the convenience store. She testified, "I guess they set him
up, or something." 

D. Conclusion 

 Viewing the above evidence in the light most favorable to the verdict, we hold that
the evidence is legally sufficient for the jury to rationally conclude beyond a reasonable
doubt that the intent to rob was formulated before the fatal wounds were inflicted on
Haynes. Further, a rational juror could find without a reasonable doubt that appellant aided,
assisted, or encouraged in the murder. Vodochodsky, 158 S.W.3d at 509; Salinas, 163
S.W.3d at 739 (citing Ransom v. State, 920 S.W.2d at 302). The above evidence likewise
shows that appellant, along with the other parties involved, "were acting together, each
contributing some part towards the execution of their common purpose." Salinas, 163
S.W.3d at 739 (citing Ransom, 920 S.W.2d at 302). (4)
 We conclude the evidence is legally
sufficient to uphold the jury's conviction. 

 Accordingly, appellant's first issue is overruled.

III. Ruling on Evidence of Extraneous Offenses, Claim of Ineffective 

Assistance of Counsel, and Alleged Violation of the Confrontation Clause 

 In her second issue, appellant contends that her "constitutional right of cross-examination was improperly limited by the trial court making an erroneous ruling regarding
404(b) extraneous offenses . . . thus depriving appellant of effective assistance of counsel." 
As briefed, appellant's second issue involves at least three different sub-issues, including
a challenge to the trial court's evidentiary ruling, a claim of ineffective assistance of counsel,
and an alleged violation of the Confrontation Clause. Each of the sub-issues involves the
trial court's ruling, which prevented the State from introducing evidence of extraneous
offenses unless and until the defendant opened the door to them. Although appellant raises
the complaints together in a single issue, we believe they are more appropriately addressed
separately as three different issues.

A. Evidence of Extraneous Offenses

 We first address appellant's contention that the trial court made an "erroneous ruling
regarding 404(b) extraneous offenses." A trial court's decision to admit or exclude evidence
is reviewed under an abuse of discretion standard. Burden v. State, 55 S.W.3d 608, 615
(Tex. Crim. App. 2001). An appellate court will not reverse a trial court's ruling unless that
ruling falls outside the zone of reasonable disagreement. Id. 

 Prior to trial, the State filed a motion to determine the admissibility of certain
extraneous offenses in the guilt-innocence phase of trial. These included three aggravated
robberies, as well as a "global [pattern of] robberies" during a specific period of time,
including an admission to an individual named Michael Smith by appellant wherein she
admitted that she had previously robbed other individuals by luring them with the promise
of prostitution. The trial court deferred its decision on the admissibility of the extraneous
offenses until trial. The trial court explained:

[T]he only issue I'm going to allow in is, if in fact it [appellant's intent in
committing capital murder] cannot be inferred, and we're not going to know
that until I hear the cross-examination of the next three witnesses, so I'm
going to carry my decision with regards to the State's request of extraneous
offenses as far as one, two and three, the 2004 and the 2001. I am in effect,
denying your request with regards to Michael Smith and this- general
statement of other robberies. But I need to hear the cross-examination
because if the cross-examination-from the cross-examination I can sense a
defensive theory because I can use the cross-examination to come to that
conclusion, so I'm going to hold on my decision. And you could, if I decide to
allow the extraneous offenses in the punishment phase, you're going to be
allowed to recall whatever witnesses you need to do that. Everybody
understand what I'm going to do? That's the only thing that I have. I'm not
going to allow it in for any other reason, except for intent.


The State did not further pursue the introduction of the extraneous offenses, and defense
counsel did not cross-examine the witnesses in regard to these offenses. There was no
objection by either party to the trial court's decision to defer ruling. And, because neither
party attempted to introduce evidence of the extraneous offenses, the trial court never ruled. 
Accordingly, without a ruling by the trial court, there is nothing before this Court for review. 
Because appellant is really complaining about defense counsel's inaction (by failing to
"open the door" to this evidence), this contention is most appropriately addressed in light
of appellant's ineffective assistance of counsel claim. This complaint is addressed below. 

B. Claim of Ineffective Assistance of Counsel 

 In a second sub-issue raised in appellant's second issue, appellant complains that
her trial counsel was ineffective because he did not cross-examine Robert Clay about his
prior testimony from a previous trial involving the same murder and robbery at issue in
appellant's case. According to appellant, "Cross-examining the witness on prior inconsistent
statements would not have opened the door to the extraneous offenses in question." In our
view, this claim is properly viewed as an ineffectiveness claim. 

 The legal standard for ineffectiveness claims was set out in Strickland v. Washington,
466 U.S. 668 (1984); see Mata v. State, No. PD-1724-04, 2007 Tex. Crim. App. LEXIS 695,
at *5-*6 (Tex. Crim. App. June 6, 2007). To prevail, appellant must first show that her
counsel's performance was deficient. See Strickland, 466 U.S. at 687. Specifically,
appellant must prove, by a preponderance of the evidence, that her counsel's
representation fell below the objective standard of professional norms. Mata, 2007 Tex.
Crim. App. LEXIS 695, at *5; Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). 
Second, appellant must show that this deficient performance prejudiced her defense. 
Strickland, 466 U.S. at 687. Appellant must show a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been different. 
Mata, 2007 Tex. Crim. App. LEXIS 694, at *6-*7; Mitchell v. State, 68 S.W.3d 640, 642
(Tex. Crim. App. 2002). A "reasonable probability" is one sufficient to undermine
confidence in the outcome. Strickland, 466 U.S. at 694; Mata, 2007 Tex. Crim. App. LEXIS
695, at *7; Mitchell, 68 S.W.3d at 642 n.10.

 Appellate review of defense counsel's representation is highly deferential and
presumes that counsel's actions fell within the wide range of reasonable and professional
assistance. Bone, 77 S.W.3d at 833. Under normal circumstances, the record on direct
appeal will not be sufficient to show that counsel's representation was so deficient and so
lacking in tactical or strategic decision-making as to overcome the presumption that
counsel's conduct was reasonable and professional. Id.; see Mata, 2007 Tex. Crim. App.
LEXIS 695, at *9-*10. Rarely will the trial record contain sufficient information to permit a
reviewing court to fairly evaluate the merits of such a serious allegation. Bone, 77 S.W.3d
at 833; see Mata, 2007 Tex. Crim. App. LEXIS 695, at *9-*10. "In the majority of cases, the
record on direct appeal is simply undeveloped and cannot adequately reflect the failings of
trial counsel." Bone, 77 S.W.3d at 833; see Mata, 2007 Tex. Crim. App. LEXIS 695, at *9-*10. 

 At the hearing on appellant's motion for new trial, appellant's trial counsel explained
his reasons for limiting the scope of his cross-examination of Robert Clay and the State's
other witnesses:

Q. Do you recall the conference outside the presence of the jury where
404(b) material was raised? 


A. Yes.

 

 * * * * 


Q. Did you have a list that was provided to you before trial of all the 404(b)
extraneous material the state intended to ask to be offered?


A. Yes.


Q. Did the case . . . [include] the aggravated robbery upon . . . Larry Wright,
was that in those materials?


A. That was the most important one.


Q. And why was that so important?


A. The . . . robbery involving Mr. Wright was almost a carbon copy of the
robbery in . . . this case. 


Q. And [it] occurred close in time right after the capital case; is that correct?


A. And it occurred in less than a month after this - the robbery in this case.


Q. Did you feel that if the jury had that information, that . . . [they] would
make a fast conviction in the capital case?


A. It would have been a 30-minute verdict. 


Q. Why do you feel that?


A. Well, I felt . . . that if the jury found out that Ms. Rivas was involved in
another robbery similar to the one in this case, committed almost in the same
manner and with the same - one of the - at least one of the same parties,
that they would probably not consider much more.


 * * * * 


Q. With the results of the judge's rulings, what were your concerns and what
did you do?


A. Well, [my co-counsel] . . . and I kind of looked at each other and we had
a short conversation about, you know, what we should do, and we figured the
danger was great that if we fully-examined the three key state's witnesses,
that the door would be opened. And so, given the nature of the case on trial,
we decided that if we were not gonna fully cross-examine the witnesses we
should tell the defendant why we were not doing it so we asked to speak to
her outside the courtroom. 


 * * * * 


Q. Was this decision one of strategy?


A. Yes. That was a conscious - I made a conscious decision not to cross-examine those three witnesses fully because of the danger of the extraneous
offense coming in, particularly the Wright robbery. 


 After holding the evidentiary hearing at which the foregoing testimony was given, the
trial court denied appellant's request for a new trial based on counsel's ineffectiveness. We
agree with that ruling. 

 The Texas Court of Criminal Appeals recently discussed and rejected ineffectiveness
claims based on trial strategy to avoid the introduction of extraneous offenses. Ex parte
McFarland, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005) (orig. proceeding). Its words
resonate strongly in this case and lead to our conclusion that appellant's ineffectiveness
claim must be overruled:

Cross-examination is inherently risky, and a decision not to cross-examine a
witness is often the result of wisdom acquired by experience in the combat of
trial. It is frequently a sound trial strategy not to attack a sympathetic
eyewitness without very strong impeachment. Otherwise, an attorney risks
reinforcing the eyewitness' previous identification of the defendant as the
assailant.


Furthermore, cross-examination is an art, not a science, and it cannot be
adequately judged in hindsight . . . . A defense strategy that avoids the
introduction of extraneous offenses under Rule 404(b) is not constitutionally
ineffective.


Id. 


 For these reasons, we overrule appellant's second issue as it relates to an
ineffectiveness claim. 


C. Alleged Violation of the Confrontation Clause 

 Appellant also complains that the trial court improperly limited her attorney's ability
to cross-examine the State's witnesses. Again, we disagree. The trial court did not make
a ruling that limited counsel's right to cross-examine the witnesses. Furthermore, defense
counsel made no objections based on the Confrontation Clause. Accordingly, the error, if
any, is not properly before this Court for review. See Dewberry v. State, 4 S.W.3d 735, 752
n.16 (Tex. Crim. App. 1999). 

IV. Submission of a Supplemental Jury Charge 

 In her third issue, appellant contends that the trial court erred in submitting the
following supplemental jury charge:

Members of the jury:


I see no reason why you jurors are not as competent, nor not as able, nor as
likely to decide the disputed issues of fact in this case and decide them right,
as the next jury that may be called to determine such issues. 


I do not want you to understand by what I say that you are going to be made
to agree, or that you will be kept out until you do agree. I do want you to
understand that it is your duty to make an honest and sincere attempt to
arrive at a verdict. Jurors should not be obstinate; they should be open-minded; they should listen to the arguments of others; and talk matters over
freely and fairly, and make an honest effort, as fair-minded men and women,
to come to a conclusion on all the issues presented to them. 

 

 The charge was submitted over defense counsel's objection after two days of jury
deliberations, totaling approximately seven and a half hours. The charge followed two jury
notes stating that the jury was at an "impasse" and that the "chasm was quite wide." The
supplemental charge was submitted at approximately 4:05 p.m. According to the docket
sheet, the jury returned a guilty verdict at 5:20 p.m. 

 An Allen charge is a supplemental charge sometimes given to a jury that declares
itself deadlocked. Allen v. United States, 164 U.S. 492, 501 (1896); see also Barnett v.
State, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006). It reminds the jury that if it is
unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no
guarantee that a second jury would find the issue any easier to resolve. Allen, 164 U.S. at
501; Barnett, 189 S.W.3d at 277 n.13. While such a charge is permissible in both the
federal system and Texas courts, trial courts must be careful to word it and administer it in
a non-coercive manner. Barnett, 189 S.W.3d at 277 n.13; see Lowenfield v. Phelps, 484
U.S. 231, 237 (1988) (noting that a supplemental Allen charge must be considered "'in its
context and under all the circumstances'" to determine whether it improperly coerced the
jury) (citation omitted); Howard v. State, 941 S.W.2d 102, 123-24 (Tex. Crim. App. 1996)
(although trial judge was aware of the numerical division when he gave supplemental Allen
charge, he "did not directly address the minority jurors and did not shade the instruction with
coercive nuance," thus, in context, charge was noncoercive). 

 The primary inquiry to determine the propriety of an Allen or "dynamite" charge is its
coercive effect on juror deliberation "in its context and under all circumstances." Lowenfield,
484 U.S. at 237; Howard, 941 S.W.2d at 123. "An instruction will constitute reversible error
only if, on its face, it is so improper as to render jury misconduct likely, or jury misconduct
is demonstrated to have occurred in fact." Davis v. State, 709 S.W.2d 288, 291 (Tex.
App.-Corpus Christi 1986, pet. ref'd). 

 In examining appellant's claim that the charge was coercive on its face, we are
mindful of the calculus of Allen:

The very object of the jury system is to secure unanimity by a comparison of
views, and by arguments among the jurors themselves. It certainly cannot be
the law that each juror should not listen with deference to the arguments and
with distrust of his own judgment, if he finds a large majority of the jury taking
a different view of the case from what he does himself. It cannot be that each
juror should go to the jury room with a blind determination that the verdict
shall represent his opinion of the case at that moment; or, that he should
close his ears to the arguments of men who are equally honest and intelligent
as himself. 


Allen, 164 U.S. at 501.

 The United States Supreme Court has re-affirmed the legitimacy of Allen and has
commented that the preceding "observations are beyond dispute, and they apply with even
greater force in a case such as this, where the charge given, in contrast to the so-called
'traditional Allen charge,' does not speak specifically to the minority jurors." Lowenfield, 484
U.S. at 237-38; Howard, 948 S.W.3d at 123. Thus, a supplemental charge which suggests
that all jurors reevaluate their opinions in the face of disparate viewpoints cannot be said
to be coercive on its face. Howard, 948 S.W.3d at 123.

 In Davis, this Court upheld a trial court's use of a charge virtually identical to the one
used in this case. Davis, 709 S.W.2d at 290-91. Appellant has presented no compelling
reason for this Court to abandon its precedent upholding the charge as noncoercive. 
Because the instruction is noncoercive, we cannot hold that it rendered jury misconduct
likely. See id. at 291. Appellant's third issue is overruled. 

V. Invocation of "The Rule" Against Deceased Victim's Adult Sister 

 In her fourth issue, appellant contends that the trial court erred in allowing the
deceased victim's adult sister, who was a witness in the case, to remain in the courtroom
after defense counsel invoked "the rule." See Tex. R. Evid. 614. The procedure for
excluding witnesses from the courtroom is commonly called putting the witnesses "under
the rule." Russell v. State, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). The purpose of
placing witnesses "under the rule" is to prevent the testimony of one witness from
influencing the testimony of another, consciously or not. Russell, 155 S.W.3d at 179. 

 In this case, defense counsel invoked the rule. The prosecutor asked that the
victim's sister be allowed to remain in the courtroom because of "her rights as a victim."
Defense counsel insisted that she be excluded. The trial court allowed the witness to
remain in the courtroom, and she later gave testimony to identify the victim and to give
general testimony about his family. She did not testify about the offense. 

 Having reviewed the record and the briefs, we conclude that no error has been
shown. In reaching this conclusion, we are guided by article 36.03 of the Texas Code of
Criminal Procedure, which provides in relevant part:

(a) Notwithstanding Rule 614, Texas Rules of Evidence, a court at the request
of a party may order the exclusion of a witness who for the purposes of the
prosecution is a victim, close relative of a deceased victim, or guardian of a
victim only if the witness is to testify and the court determines that the
testimony of the witness would be materially affected if the witness hears
other testimony at the trial.

 

(b) On the objection of the opposing party, the court may require the party
requesting exclusion of a witness under Subsection (a) to make an offer of
proof to justify the exclusion.

 

Tex. Crim. Proc. Code Ann. art. 36.03(a), (b) (Vernon 2007). 

 Appellant has not addressed article 36.03 in her brief. She has instead focused
solely on rule 614. We find her arguments unpersuasive because they do not account for
the rights given to close relatives of a deceased victim under article 36.03. Without
addressing those rights, it is impossible to establish that the trial court erred. Furthermore,
appellant has not demonstrated how, if at all, the witness was influenced in her testimony
by the testimony she heard. See Russell, 155 S.W.3d at 179. Relief is precluded without
such a showing, even if the trial court had erred. See id. Appellant's fourth issue is
therefore overruled. 

VI. Pre-Trial Motion to Compel Interview with Co-Defendant Robert Clay

 In her fifth issue, appellant contends that the trial court erred by not compelling the
State's witness to undergo an interview with defense counsel before trial. Appellant's
argument rests entirely on her understanding that "counsel has the responsibility to seek
out and interview potential witnesses." Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim.
App. 1990). Although appellant's understanding of counsel's professional responsibility
seems correct, we nevertheless disagree with her argument that the trial court erred by not
compelling the interview. Primarily, this is because appellant has failed to direct our
attention to any precedent or statute authorizing the trial court to compel such an interview. 

 Neither the Texas nor the United States Constitution contains a general right to
discovery in a criminal case. A criminal defendant's right to discovery is limited to
exculpatory or mitigating evidence in the State's possession, custody, or control. In re
State, 162 S.W.3d 672, 678 (Tex. App.-El Paso 2005) (original proceeding). Beyond this,
a criminal defendant has no general right of discovery. Washington v. State, 856 S.W.2d
184, 187 (Tex. Crim. App. 1993). The trial court's power to enter discovery orders in
criminal cases is limited to the authority granted by article 39.14. In re State, 162 S.W.3d
at 678. Article 39.14 provides that upon motion by the defendant showing good cause, and
upon notice to the other parties, the trial court:

[M]ay order the State before or during trial of a criminal action . . . to produce
and permit the inspection and copying or photographing by or on behalf of the
defendant of any designated documents, papers, written statement of the
defendant, (except written statements of witnesses and except the work
product of counsel in the case . . .), books, accounts, letters, photographs,
objects or tangible things not privileged which constitute or contain evidence
material to any matter involved in the action and which are in the possession,
custody or control of the State or any of its agencies.

 

Tex. Code Crim. Proc. Ann. art. 39.14 (Vernon Supp. 2006). Accordingly, criminal
discovery orders must fall within the confines of that article's limited authorization. Id. 
Article 39.14 does not provide for the pretrial interview of witnesses; it does not even entitle
a defendant to witnesses' written statements. Thus, we conclude that an order requiring
the State's witness to undergo an interview with defense counsel would clearly exceed the
scope of discovery authorized by article 39.14. See State ex rel. Wade v. Stephens, 724
S.W.2d 141, 144 (Tex. App.-Dallas 1987, orig. proceeding); see also State ex. rel.
Robinson, 116 S.W.3d 115, 118 (Tex. App.-Houston [14th Dist.] 2002, orig. proceeding). 
On appeal, we have no authority that would allow a trial court to authorize pre-trial discovery
by way of a compelled interview. Accordingly, the trial court did not err in denying
appellant's request to order the State's witness to submit to a pretrial interview. We
overrule appellant's fifth issue. (5)
 

VII. Jury Instruction on "Mitigating Evidence"


 In her sixth issue, appellant complains that the trial court erroneously refused her
request that the jury be charged that they may consider any evidence to be mitigating even
if irrelevant to her moral blameworthiness. (6)
 The complained-of instruction reads, "You are
instructed that the term 'mitigating evidence,' as used herein, means evidence that a juror
might regard as reducing the defendant's moral blameworthiness." Appellant claims that
her requested charge was necessary to "prevent confusion and increase clarity" in the
definition of mitigating evidence. See Tex. Code Crim. Proc. Ann. art. 37.071, § 2(f)(4)
(Vernon 2006). (7) She argues that the instruction given to the jury unconstitutionally limits the
definition of mitigating evidence to evidence concerning only moral blameworthiness.

 However, as the State points out, and as appellant concedes, the challenged
instruction has been held not to unconstitutionally narrow the jury's discretion to factors
concerning only moral blameworthiness. See Perry v. State, 158 S.W.3d 438, 449 (Tex.
Crim. App. 2004) (citing Cantu v. State, 939 S.W.2d 627, 648-49 (Tex. Crim. App. 1996));
Prystash v. State, 3 S.W.3d 522, 534-535 (Tex. Crim. App. 1999). Faced with a similar
challenge in Cantu, the Texas Court of Criminal Appeals held that article 37.071, section
2(e) solves any potential narrowing problem in section 2(f)(4). Cantu, 939 S.W.2d at
648-49. Article 37.071, section 2(e) instructs the trial court to charge the jury that they must
"take into consideration 'all of the evidence, including the circumstances of the offense, the
defendant's character and background, and the personal moral culpability of the defendant'
in determining whether sufficient mitigating circumstances exist to warrant a life sentence." 
Id. (emphasis added in Cantu). Although mitigating evidence is statutorily defined as that
evidence which "a juror might regard as reducing a defendant's moral blameworthiness,"
article 37.071, section 2(f)(4), the trial court's instructions pursuant to section 2(e) provide
the jury with a vehicle to respond to a broader range of mitigating evidence. See id.; Goff
v. State, 931 S.W.2d 537, 556 (Tex. Crim. App. 1996); Lawton v. State, 913 S.W.2d 542,
555-56 (Tex. Crim. App. 1995). 

 The jury in the present case was instructed:

In determining your answers to No. 1 and No. 2 special issues, you shall
consider all the evidence admitted at both stages of the trial.


Additionally, you shall consider all [evidence] admitted at both stages of the
trial as to defendant's background or character or the circumstances of the
offense that militates or mitigates against the imposition of the death penalty. 


Although appellant concedes that the court of criminal appeals has rejected her argument,
she nonetheless claims that because "[t]he charge in this case does not directly tell the jury
to read Article 37.071, Section 2(e) together with the Section 2(f)(4) instruction. . . . [T]here
is [a] possibility that the jury will consider only Section 2(f) and thus narrow its consideration
of mitigating circumstances only to factors that relate to moral blameworthiness." In addition
to the above instructions, the jury was asked to answer special issue number three, which
provided:

Do you find, taking into consideration all of the evidence, including the
circumstances of the offense, the defendant's character and background, and
the personal moral culpability of the defendant, that there is a sufficient
mitigating circumstance or circumstances to warrant that a sentence of life
imprisonment rather than a death sentence be imposed? 


The jury answered "Yes," and appellant was given a life sentence rather than a death
sentence. We conclude that appellant's argument is without merit because the jury
instruction, together with special issue three, provided the jury with a vehicle to respond to
a broader range of mitigating evidence. See Cantu, 939 S.W.2d at 648-49. Accordingly,
in light of Cantu and its progeny, we conclude that the article 37.071, section 2(f)(4)
instruction did not unconstitutionally narrow the jury's discretion to factors concerning only
moral blameworthiness. We further conclude that because appellant does not complain of
any evidence to which the jury could not give effect, even if the statute is deficient in the
way that she suggests, she did not suffer the deficiency. Prystash, 3 S.W.3d at 535 (citing
McFarland v. State, 928 S.W.2d 482, 518 (Tex. Crim. App. 1996)). Appellant's sixth issue
is overruled.

VIII. "Mitigating Evidence"


 In her seventh issue, appellant claims the trial court erred in denying her requested
charge as it relates to paragraph seven of the punishment charge. 

 The complained-of-charge tracks the language of article 37.071(d)(1) of the Texas
Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 37.071(d)(1). The
charge reads, "Additionally, you shall consider all [evidence] admitted at both stages of the
trial as to defendant's background or character or the circumstances of the offense that
militates or mitigates against the imposition of the death penalty." Appellant objected to the
charge claiming that "the phrase 'mitigates against the imposition of the death penalty' is
a flagrant misuse of the English language that creates confusions [sic] which prevent the
charge from being an adequate vehicle by which the jury can give effect to mitigating
evidence." Appellant's proposed charge requested that the trial court replace the word
"mitigate" with the word "militate." 

 We decline to address appellant's contention for various reasons. First, appellant
has failed to cite to appropriate authority in support of her claim that the particular wording,
specifically the use of the word "mitigate," makes the charge confusing. See Tex. R. App.
P. 38.1(h). Moreover, appellant has not provided a legal basis for finding the complained-of-language in article 37.071(d)(1) erroneous or unconstitutional. See id. (8)
 Finally, even if
we were to assume the statute is deficient in its "flagrant misuse of the English language,"
appellant has failed to show how she suffered from the deficiency. Prystash, 3 S.W.3d at
535. Appellant likely cannot show how she was harmed because the jury found that there
was mitigating evidence which warranted a life sentence rather than a death sentence. 
Accordingly, we overrule appellant's seventh issue.

IV. Conclusion

 The judgment of the trial court is affirmed. 

 _________________________

 DORI CONTRERAS GARZA,

 Justice

 

Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 12th day of July, 2007.

 
1. Haynes was a foreman for D-Mack Construction and was staying at the Days Inn with a construction crew
while he was directing a job at Ed Hicks Nissan.
2. The man was later identified by appellant as Leonard Haskins. Haskins was arrested a few days later.

3. A hypothetically correct charge would instruct the jury to convict appellant of capital murder if she (1)
intentionally (2) committed murder (3) in the course of committing or attempting to commit robbery (4) as a
party. See Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003), § 19.03(a)(2) (Vernon Supp. 2006); see also
Tex. Pen. Code Ann. §§ 7.01(a), 7.02(a)(2) (Vernon 2003).

4. At the conclusion of her legal sufficiency challenge, appellant asks that the case be "reversed and dismissed
or in the alternative and new trial granted." However, appellant has not briefed factual sufficiency as an
appellate issue. The Texas Court of Criminal appeals has held that a single sentence requesting an appellate
court to conduct a factual sufficiency review, without any other reference to factual sufficiency or the applicable
standard, is inadequately briefed as to that issue. See Tex. R. App. P. 38.1(h); Cardenas v. State, 30 S.W.3d
384, 386 n.2 (Tex. Crim. App. 2000); Chavero v. State, 36 S.W.3d 688, 693 (Tex. App.-Corpus Christi 2001,
no pet.). We hold appellant's claim that the evidence in this case is factually insufficient is inadequately
briefed and not properly before this Court. We will, therefore, not conduct a factual sufficiency review.

5. Appellant could have requested that the trial court order a deposition of the witness under article 39.02 of the
Texas Code of Criminal Procedure; however, appellant failed to do so. See Tex. Code Crim. Proc. Ann. art.
39.02 (Vernon Supp. 2006). Accordingly, we need not address the trial court's authority under this provision. 
See Tex. R. App. P. 33.1. Additionally, we note that the witness in question asserted his Fifth Amendment
right when defense counsel attempted to interview him. 

6. When reviewing charge error, we utilize a two-step process. See King v. State, 174 S.W.3d 796, 812 (Tex.
App.-Corpus Christi 2005, pet. ref'd). Our first duty in analyzing a jury-charge issue is to determine whether
error exists. Id. If we find error, we analyze that error for harm. Id. Preservation of charge error does not
become an issue until we assess harm. Id. The degree of harm necessary for reversal depends on whether
the appellant preserved the error. See Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (en banc). 
If, as in the present case, the error in the charge was timely objected to in the trial court, reversal is required
if the error is calculated to injure the rights of the defendant. See Tex. Code Crim. Proc. Ann. art. 36.19
(Vernon 1981); Penry v. State, 178 S.W.3d 782, 788 (Tex. Crim. App. 2005). 

7. Appellant objected to this instruction and proposed an instruction that included language emphasizing that,
in considering mitigating evidence, the jury could consider any evidence that was mitigating in nature and not
only evidence relating to appellant's moral blameworthiness. 
8. The thrust of appellant's argument is that "the author of the statute incorrectly uses the word 'mitigates'," "the author
combines it inaccurately with the preposition 'against'," and "the author violates the parallel structure of the compound
verb phrase."