**Gilberto CHAVERO, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13-97-876-CR.**

Court of Appeals of Texas,
Corpus Christi.

Jan. 11, 2001.

---

Alfred Morales Jr., McAllen, Rogelio Garza, Edinburg, for Appellant.

Rene Guerra, District Attorney, Theodore C. Hake, Asst. Criminal District Attorney, Edinburg, for Appellee.

Before Justices HINOJOSA, YAÑEZ, and CHAVEZ [1].

---

1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

## OPINION

HINOJOSA, Justice.

A jury found appellant, Gilbert Chavero, Jr., guilty of the offense of capital murder, and the trial court assessed his punishment at life imprisonment. In five issues, appellant contends: (1) the evidence is insufficient to support his conviction, (2) the statement he gave to police was taken in violation of his Fifth and Sixth Amendment rights to counsel, (3) he received ineffective assistance of counsel, (4) the prosecutor engaged in improper jury argument, and (5) his extrajudicial confession was not properly corroborated. We affirm.

### A. SUFFICIENCY OF THE EVIDENCE

■ In his fifth issue, appellant contends his "conviction should be vacated and a judgment of acquittal entered because there was insufficient evidence to establish all of the necessary elements for both the underlying offense (aggravated sexual assault) and capital murder."

### 1. *Factual Sufficiency Claim*

In his brief, appellant argues:

the evidence in this case is legally insufficient to show that he caused the death of Iris Hidalgo while committing the offense of aggravated sexual assault. Because the evidence in this case against Appellant was obviously insufficient to prove he was guilty of capital murder as alleged in the indictment, the Appellant respectfully requests that this court conduct a complete factual sufficiency [review] of this case in accordance with established precedent. *Jackson v. State,* 672 S.W.2d 801 (Tex.Crim. App.1984); *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996); *see also Jones v. State,* 922 S.W.2d 305 [944 S.W.2d 642] (Tex.Crim.App.1996).

We note that the *Jackson* case cited by appellant deals with a pre-*Geesa* analysis of whether every reasonable hypothesis was excluded. This is no longer valid law.

*See Geesa v. State,* 820 S.W.2d 154, 160–61 (Tex.Crim.App.1991) (rejecting standard of whether circumstantial evidence excludes every reasonable hypothesis other than guilt of defendant as standard of review for factual sufficiency). Further, the *Jones* case cited by appellant does not exist; we find no case with this citation.

■ The proper remedy for a finding of legal insufficiency of the evidence to support a conviction is an acquittal. *Tibbs v. Florida,* 457 U.S. 31, 39, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *Ladd v. State,* 3 S.W.3d 547, 557 (Tex.Crim.App.1999); *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex. Crim.App.1992). The proper remedy for a finding of factual insufficiency of the evidence is a remand for a new trial so that a second jury can evaluate the evidence. *Ladd,* 3 S.W.3d at 557; *Clewis,* 922 S.W.2d at 133–34. With respect to his sufficiency issue, appellant requests only "that this court vacate the Appellant's sentence and enter a judgment of acquittal due to insufficient evidence." Thus, appellant requests only the remedy for legal insufficiency.

Appellant has neither briefed factual sufficiency as an appellate issue, nor requested the proper relief. The Court of Criminal appeals has recently held, in a case presented to it by appellant's appellate counsel and using the identical language of this appeal, that a single sentence requesting an appellate court to conduct a factual sufficiency review, without any other reference to factual sufficiency or the applicable standard, is inadequately briefed as to that issue. *Cardenas v. State,* 30 S.W.3d 384, 386 (Tex.Crim.App. 2000). We hold appellant's claim that the evidence in this case is factually insufficient is inadequately briefed and not properly before this Court. We will, therefore, not address appellant's factual sufficiency claim.

### 2. *Legal Sufficiency Claim*

We now address appellant's claim that the evidence is legally insufficient to sup-

port his conviction because the State did not prove all the elements of the underlying felony of aggravated sexual assault. Specifically, appellant asserts there is insufficient evidence to support the State's claim that he murdered the victim while attempting to commit an aggravated sexual assault on her.

■ When we review the legal sufficiency of the evidence, we look at all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim.App.2000); *Patrick v. State,* 906 S.W.2d 481, 486 (Tex.Crim.App.1995); *Turro v. State,* 867 S.W.2d 43, 46–47 (Tex. Crim.App.1993). Sufficiency of the evidence is measured by the hypothetically correct jury charge, which accurately sets out the law, is authorized by the indictment, and does not unnecessarily increase the State's burden of proof. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); *Cano v. State,* 3 S.W.3d 99, 105 (Tex.App.—Corpus Christi 1999, pet. ref'd). The jury, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, is free to accept or reject all or any part of the testimony of any witness. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1981); *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim. App.1986); *Bowden v. State,* 628 S.W.2d 782, 784 (Tex.Crim.App.1982).

Appellant was charged with capital murder in connection with the death of Iris Yvette Hidalgo. The indictment alleges that appellant, on or about March 23, 1996,

did then and there in the course of attempting to commit aggravated sexual assault on Iris Yvette Hidalgo, the victim, did then and there intentionally commit murder by causing the death of an individual, Iris Yvette Hidalgo, the victim, by stabbing the victim with a knife ... [or in the alternative] by cutting the victim with a sharp object unknown to the Grand Jurors.

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PEN. CODE ANN. § 19.02(b)(1)(Vernon 1994). A person commits capital murder if he intentionally commits the murder in the course of committing or attempting to commit aggravated sexual assault. TEX. PEN. CODE ANN. § 19.03(a)(2) (Vernon 1994). A person commits aggravated sexual assault:

(1) if the person:

(A) intentionally or knowingly:

(i) causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent;

(ii) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or

(iii) causes the sexual organ or another person, without that person's consent, to contact or penetrate the mouth, anus, sexual organ of another person, including the actor; ... and

(2) if:

(A) the person:

(i) causes serious bodily injury or attempts to cause the death of the victim or another person in the course of the same criminal episode;

(ii) by acts or words places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person;

(iii) by acts or words occurring in the presence of the victim threatens to cause the death, serious bodily injury, or kidnapping of any person;

(iv) uses or exhibits a deadly weapon in the course of the same criminal episode; . . . .

Tex. Pen. Code Ann. § 22.021(a) (Vernon Supp.2000).

 Viewing the evidence in the light most favorable to the verdict, appellant, a City of Edcouch police officer, claimed to have discovered the body of 18–year–old Iris Hidalgo in a sewer plant holding pond near La Villa, Texas in the early morning hours of Sunday, March 24, 1996. The body was nude except for a shirt and a bra that had been pushed up over one breast. The victim's panties, shoes and jeans (which had one leg turned out) were recovered from the pond. There was a large pool of the victim's blood on the grass near the edge of the pond. The cause of death was loss of blood from a deep gash in the victim's throat. There was also a postmortem wound on the neck, as well as a pre-mortem, non-fatal round puncture wound on the back of the neck. There were ligature marks around the victim's wrists, a round bruise on her knee suggestive of a bite mark, and bruising around the entrance to her vagina.

Appellant initially claimed he had found a folded note on his patrol car that read: "Go to sewer plant." He called for back-up, and Officer Ricardo De Hoyos answered to assist. Appellant showed De Hoyos the note, which was not folded. Appellant and De Hoyos then drove to the sewer plant. At the sewer plant, appellant asked De Hoyos which way he wanted to proceed. Despite the fact that De Hoyos chose to go left, appellant also proceeded to the left. A few seconds later, appellant screamed that there was a body in the water. At the time, appellant was walking back toward his patrol car. De Hoyos was not able to ascertain the object in the water was a body until other officers arrived and they all shined their flashlights on it. Several officers present at the re-

moval of the body testified to appellant's unusual behavior. Appellant acted "panicky" and nervous, fell to his knees crying "in agony," and had dry heaves.

Appellant later gave a statement to investigators that he had engaged in consensual "kinky" sexual intercourse with the victim while she was handcuffed, on the hood of his patrol car. He claimed this occurred at the sewer plant at approximately 1:00 a.m. on Saturday, March 23, while he was on duty, and that she had been alive and fully dressed when he left. He returned to the sewer plant shortly thereafter and found her body floating in the water. He admitted writing the "Go to sewer plant" note himself and planting it on his patrol car.

The victim went to La Villa late on Friday, March 22, hoping to see a friend. She told various people that an Edcouch police officer had stopped her twice before, flirted with her, and asked for her phone number, which she did not give him. She referred to appellant as "disgusting" and a "perv." The victim's sister testified that the victim was attracted to young, athletically-built men, and that she despised overweight people.[2]

After searching appellant's home, police found a photograph of the victim. DNA testing revealed the victim's blood was present on the dashboard and passenger door armrest of appellant's patrol car, on bloodstained dry grass found on the passenger side floorboard of appellant's patrol car, and on a handgun clip recovered from appellant's home. The probability of the blood on the dashboard and armrest belonging to any unrelated individual other than the victim was fixed at one in 363,000,000 for the southeastern United States Hispanic population.

Police logs show that appellant's whereabouts on Saturday, March 23, are unaccounted-for from 12:54 a.m. until 1:59 a.m., except for a "10–6" call.[3] At 1:59 a.m.,

---

**2.** Photographs of appellant show that he is significantly overweight.

**3.** To police, "10–6" means "I'm busy."

appellant arrived at the police station and was met by his wife, who had brought him a clean pair of jeans at his request. Appellant told her that he needed the clean jeans because he had urinated on himself. However, he never gave her the jeans he was wearing that night.

In light of this evidence, we hold that a rational trier of fact could have found appellant murdered the victim in the course of attempting to commit an aggravated sexual assault on her, and that the evidence is legally sufficient to support his conviction of capital murder. Appellant's fifth issue is overruled.

### B. APPELLANT'S STATEMENT

■ In his fourth issue, appellant contends that his extrajudicial confession was not corroborated as required by Texas law.

■ No criminal conviction can be based upon a defendant's extrajudicial confession unless the confession is corroborated by independent evidence tending to establish the *corpus delicti. Fisher v. State,* 851 S.W.2d 298, 302 (Tex.Crim.App.1993). The primary purpose of the *corpus delicti* rule is to assure that no person is convicted without some independent evidence showing the crime to which he confessed was actually committed by someone. *Gribble v. State,* 808 S.W.2d 65, 71 (Tex.Crim.App.1990)(plurality op.). The independent evidence must corroborate a defendant's extrajudicial confession to capital murder as to both the murder and the underlying felony. *Cardenas v. State,* 30 S.W.3d 384, 389, 2000 Tex.Crim.App. LEXIS 45, *14 (Tex.Crim.App.2000); *Chambers v. State,* 866 S.W.2d 9, 15 (Tex. Crim.App.1993). The corroborating evidence need not conclusively prove the underlying offense; rather, all that is required is that there be some evidence which renders the commission of the offense more probable than it would be without the evidence. *Cardenas,* 30 S.W.3d at 390, 2000 Tex.Crim.App. LEXIS at *14; *Chambers,* 866 S.W.2d at 15–16. Under the *corpus delicti* rule, our task as an

appellate court is to consider all the record evidence, other than appellant's confession, in the light most favorable to the jury's verdict to determine whether that evidence tended to establish the *corpus delicti. Mestiza v. State,* 923 S.W.2d 720, 726 (Tex. App.—Corpus Christi 1996, no pet.)(citing *Fisher,* 851 S.W.2d at 302).

Assuming, *arguendo,* that appellant's statement to investigators constitutes a "confession," there is plenty of evidence in the record showing the *corpus delicti.* The record shows that the victim's body, nude except for her shirt and bra, was thrown into a sewer plant pond, along with the rest of her clothing. A large pool of her blood was nearby; she died as a result of her throat being cut. The autopsy revealed wrist bruises consistent with the application of handcuffs, vaginal bruising, other bruising, and other wounds. This evidence tends to prove that the victim's death was caused by the criminal act of another during an attempt at or during the course of an aggravated sexual assault.

We hold the independent evidence sufficiently corroborates appellant's statement. Appellant's fourth issue is overruled.

### C. MOTION TO SUPPRESS

■ In his first issue, appellant contends the trial court erred in denying his motion to suppress the statement he gave to the police because it was taken in violation of his Fifth and Sixth Amendment rights to counsel.

At the hearing on the motion to suppress, Lt. Florentino Garza, an investigator with the Hidalgo County Sheriff's Office, testified that Investigator Marc Solis read appellant his rights, and that appellant indicated he understood those rights by initialing and signing the warnings. According to Garza, appellant never requested an attorney nor asked that the interview cease. Garza stated he never told appellant that he did not need an attorney.

Appellant testified that he was never told he was in custody. In fact, he was told he could leave if he wanted. Solis read him his rights. Later, before the interview began, appellant asked Garza if he needed an attorney, and Garza told him he did not. Appellant admitted he understood his constitutional rights, and that he voluntarily signed a written waiver of those rights. Appellant testified that he repeatedly asked for an attorney before and during the giving of the statement, but he was denied one. Appellant was arrested about two hours after giving the statement. He was a certified peace officer who studied the *Miranda* warnings at the police academy.

 A trial court's ruling on a motion to suppress is generally reviewed for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999); *Maddox v. State*, 682 S.W.2d 563, 564 (Tex. Crim.App.1985). The trial court is the sole trier of fact and judge of the weight and credibility of the evidence. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App. 1999). The reviewing court may not disturb supported findings of fact absent an abuse of discretion. *Id.* A review of a trial court's ruling on a motion to suppress presents an application of law to a fact question. *Maestas v. State*, 987 S.W.2d 59, 62 (Tex.Crim.App.1999). We must afford almost total deference to a trial court's determination of facts supported by the record and its rulings on application of law to fact questions, when those fact findings involve an evaluation of the credibility and demeanor of witnesses. *Maestas*, 987 S.W.2d at 62; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). However, we review *de novo* questions of law and mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Oles*, 993 S.W.2d at 106; *Maestas*, 987 S.W.2d at 62; *Guzman*, 955 S.W.2d at 89.

The evidence concerning appellant's possible invocation of his right to counsel was conflicting, requiring the trial court to evaluate the witnesses' credibility and demeanor. Thus, we must review appellant's issues regarding suppression of his oral and written statements under an abuse of discretion standard, and defer to the trial court's findings as long as they are supported by the record. *See Maestas*, 987 S.W.2d at 62.

### 1. Sixth Amendment Rights

 The Sixth Amendment to the U.S. Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The purpose of the Sixth Amendment right to counsel is:

to protect the unaided layman after the adverse positions of government and defendant have solidified with respect to a particular alleged crime. The right thus attaches at the initiation of adversarial proceedings, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment, and no request for counsel need be made by the accused. Once the Sixth Amendment right to counsel attaches, government efforts to elicit information from the accused, including interrogation, represent "critical stages" at which the right to counsel applies.

*Cobb v. State*, 2000 WL 275644, 2000 Tex. Crim.App. LEXIS 32, *9–*10 (Tex.Crim. App., March 15, 2000) (citations omitted), *cert. granted*, 530 U.S. 1260, 120 S.Ct. 2716, 147 L.Ed.2d 981 (2000). A fundamental safeguard provided by the Sixth Amendment is the "general prohibition of state initiated questioning of an accused who is represented by counsel during all critical stages of criminal proceedings once formal adversarial proceedings have begun, except where counsel is present or is informed of the interrogation." *State v. Frye*, 897 S.W.2d 324, 327 (Tex.Crim.App. 1995).

 The United States Supreme Court has not established a "bright line" rule to

mark when an adversarial proceeding has begun, and has instead left this determination to the state courts to answer. *United States v. Gouveia*, 467 U.S. 180, 187–89, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984); *Hidalgo v. State*, 983 S.W.2d 746, 752 (Tex. Crim.App.1999). The Court of Criminal Appeals has also declined to declare such a rule. *Hidalgo*, 983 S.W.2d at 752; *Frye*, 897 S.W.2d at 327–28; *Green v. State*, 872 S.W.2d 717, 720 (Tex.Crim.App.1994). Instead, it has recognized that determining whether a particular event is a critical stage—thus triggering a Sixth Amendment right to counsel—depends on whether the accused requires aid in coping with legal problems or assistance in meeting his adversary. *Hidalgo*, 983 S.W.2d at 752; *Frye*, 897 S.W.2d at 327–28; *Green*, 872 S.W.2d at 720–22. When an indictment occurs prior to arraignment or any other legal proceeding, the Sixth Amendment right to counsel does not attach before indictment. *DeBlanc v. State*, 799 S.W.2d 701, 706 (Tex.Crim.App.1990); *see also Cobb*, 2000 WL 275644, 2000 Tex.Crim. App. LEXIS at *11 ("Once appellant was *indicted* for the Owings burglary, his Sixth Amendment right to counsel attached to that offense . . .")(emphasis added).

In the instant case, we conclude that at the time appellant gave his statement, he was merely a suspect. Further, as a licensed peace officer, appellant was sufficiently familiar with the process to determine whether he should have an attorney present during questioning. We hold the trial court did not err in denying appellant's motion to suppress because appellant's Sixth Amendment right to counsel was not violated.

### 2. *Fifth Amendment Rights*

■ The Fifth Amendment to the U.S. Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . ." U.S.

CONST. amend. V. The importance of this right is emphasized by its inclusion in the *Miranda* warnings. *See Maestas*, 987 S.W.2d at 61. However, invocation of an individual's Fifth Amendment right to counsel "requires, at a minimum, some statement that can be reasonably construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *Guidry v. State*, 9 S.W.3d 133, 143 (Tex. Crim.App.1999) (*citing McNeil v. Wisconsin*, 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) *and Green v. State*, 934 S.W.2d 92, 97 (Tex.Crim.App.1996)). The question of whether the accused has actually invoked the right to counsel is an objective inquiry, requiring some statement that can reasonably be construed as an expression of a desire for an attorney's assistance. *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362 (1994).

The trial court denied appellant's motion to suppress, impliedly finding that appellant never informed Garza or any other law enforcement official that he wished to consult with an attorney, and that he did not invoke his right to counsel prior to giving his statement. Because these findings are supported by the record, we hold the trial court did not err in denying appellant's motion to suppress. *See Maestas*, 987 S.W.2d at 62. Appellant's first issue is overruled.

### D. JURY ARGUMENT

■ In his third issue, appellant contends the trial court erred in overruling his objection to two statements made by the prosecutor during closing argument. The prosecutor stated:

Nobody ever claimed that these were the blue jeans. We never said that State's Exhibit 98 were the blue jeans he wore on the night of the murder. You all were here Friday. What happened to those blue jeans? What happened to them? Mattie Chavero [appellant's wife] took him a clean pair of

jeans at 2:00 a.m. Nobody claimed those were the jeans. We don't know where those jeans are. She never touched those jeans. She never washed those jeans. She never smelled those jeans. Why? Because there was blood all over them.

Appellant also contends the prosecutor's argument was improper because the prosecutor,

in describing a summary of the events as they unfolded, included a number of sequence of [sic] events which had no support in the record, including the purported dialogue between decedent and Appellant, and the events leading to her sexual assault, indicating that the decedent was kicking and screaming.

Defense counsel objected to both statements, contending that the prosecutor was "arguing outside the record." The trial court overruled both objections. Appellant now argues that the prosecutor argued facts outside the record and mislead the jury; thus, the argument was improper.

 To fall within the realm of proper jury argument, the argument must encompass one of the following areas: (1) summation of the evidence presented at trial; (2) reasonable deduction drawn from the evidence; (3) an answer to the opposing counsel's argument; or (4) a plea for law enforcement. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App.1988); *Moore v. State,* 997 S.W.2d 863, 869 (Tex. App.—Fort Worth 1999, pet. ref'd.). Counsel is allowed wide latitude in drawing inferences from the evidence, provided those inferences are reasonable, fair, legitimate, and offered in good faith. *Lagrone v. State,* 942 S.W.2d 602, 619 (Tex.Crim. App.1997). In examining challenges to jury argument, an appellate court considers the remark in the context in which it appears. *Gaddis,* 753 S.W.2d at 398; *Denison v. State,* 651 S.W.2d 754, 761–62 (Tex.Crim.App.1983). Furthermore, a prosecutor may argue his opinions concerning issues in the case so long as the opinions are based on the evidence in the record and do not constitute unsworn testimony. *McKay v. State,* 707 S.W.2d 23, 37 (Tex.Crim.App.1985).

After reviewing the record, we find the complained-of statements were made during the State's final closing argument, after appellant's counsel had completed his argument. During his jury argument, appellant's counsel asserted that the jeans and uniform shirt introduced into evidence by the State were the same ones appellant was wearing at the time the murder occurred, and implied that, because there was no blood on the clothing introduced into evidence, appellant could not have cut the victim's throat as charged.

In the first complained-of statement, the prosecutor responded to appellant's counsel's assertion by noting that the State had never claimed the introduced items were worn by the appellant on the night of the murder. The State had already argued the implausibility of Mrs. Chavero's testimony that she had taken appellant a pair of clean jeans because he had urinated on himself by noting that she had taken appellant clean jeans, but no clean underwear. He then opined the real reason Mrs. Chavero had not been given the soiled jeans was because they were bloodstained. In this context, the remarks constituted an answer to opposing counsel's argument, and an inference from the evidence presented by Mrs. Chavero's testimony, which we find permissible. *See Gaddis,* 753 S.W.2d at 398; *McKay,* 707 S.W.2d at 37.

In the second complained-of statement, the prosecutor made inferences based on the following evidence:

(1) that appellant stopped the victim ostensibly for a traffic violation, based on the evidence that her car was found on the side of a road near the sewer plant with her driver's license on the console and the driver's side window rolled halfway down;

(2) that appellant handcuffed the victim, based on the evidence that there was bruising on the victim's wrists consistent with handcuffs;

(3) that appellant had to struggle to remove the victim's clothing, based on the evidence that the victim's bra and shirt were found pushed above her breast, the leg of her jeans was turned inside-out, and her jeans and panties were flung into the sewage pond;

(4) that appellant waited until the victim had bled completely out before he cut her again to see if she was dead, based on the autopsy findings of a second, post-mortem neck wound; and

(5) that a big, strong person such as appellant carried her body to the pond and threw it in, based on the absence of drag marks at the murder scene.

We hold this argument permissible as an answer to appellant's counsel's argument that there was no evidence the murder had occurred in an attempt at or in the course of an aggravated sexual assault, and as reasonable inferences from the evidence presented at trial. *See Gaddis*, 753 S.W.2d at 398; *McKay*, 707 S.W.2d at 37. Appellant's third issue is overruled.

### E. INEFFECTIVE ASSISTANCE OF COUNSEL

█ In his second issue, appellant contends he was denied effective assistance of counsel during trial "because his trial counsel failed to effectively present a viable defense in his capital murder case." However, he argues only that trial counsel was ineffective because he did not contest the validity of the two consents appellant gave police to search his home.

█ Claims of ineffective assistance are analyzed under the rule set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the court of criminal appeals in *Hernandez v. State*, 726 S.W.2d 53, 56 (Tex.Crim.App.1986). The *Strickland* test is the benchmark for judging whether counsel's conduct has so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a reliable result. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim. App.1999) (citing *McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App.1992)). The appellant must first show his trial counsel's performance was not reasonably effective, falling below an objective standard of reasonableness under the prevailing professional norms. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Thompson*, 9 S.W.3d at 812–13. A showing of deficiency requires a demonstration that trial counsel made errors so serious that he was not functioning as the counsel guaranteed a defendant under the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. We must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that counsel made all significant decisions in the exercise of reasonable professional judgment. *Young v. State*, 991 S.W.2d 835, 837 (Tex.Crim.App.1999). There is also a strong presumption that trial counsel's conduct was reasonable and constitutes sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *McFarland*, 845 S.W.2d at 843. The "reasonably effective assistance" standard does not mean errorless counsel. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex.Crim.App. 1991); *Hernandez v. State*, 799 S.W.2d 507, 508 (Tex.App.—Corpus Christi 1991, pet. ref'd).

█ If the appellant can demonstrate deficient assistance under the first part of the *Strickland* test, he must then show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Thompson*, 9 S.W.3d at 812; *Washington v. State*, 771 S.W.2d 537, 545 (Tex.Crim.App.1989). "A reasonable probability" means "a probabil-

ity sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Thompson*, 9 S.W.3d at 812; *Ex parte Walker*, 777 S.W.2d 427, 430 (Tex.Crim.App.1989). The prejudice element requires a showing that trial counsel's errors were so serious as to deprive the defendant of a fair trial, one whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. The totality of the representation is evaluated from counsel's perspective at trial, not his isolated acts or omissions in hindsight. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex.Crim.App.1990); *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986).

 The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Ex parte Scott*, 581 S.W.2d 181, 182 (Tex.Crim.App.1979); *Stone v. State*, 17 S.W.3d 348, 350 (Tex. App.—Corpus Christi 2000, pet. ref'd). The appellant must prove his claim of ineffective assistance of counsel by a preponderance of the evidence. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex.Crim.App.1991). Furthermore, he must show ineffective assistance firmly rooted in the record. *Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim.App.1994). We may not speculate as to the reasons behind trial counsel's actions nor should we try to second guess trial counsel's tactical decisions which do not fall below the objective standard of reasonableness. *Young*, 991 S.W.2d at 837–38; *Solis v. State*, 792 S.W.2d 95, 100 (Tex.Crim.App.1990); *Stone*, 17 S.W.3d at 350.

These demanding standards are virtually impossible to meet when no proper evidentiary record was developed at a hearing on a motion for new trial. The court of criminal appeals noted recently that "[a] substantial risk of failure accompanies an appellant's claim of ineffective assistance on direct appeal. . . . In a majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel."

*Thompson*, 9 S.W.3d at 813–14. The reason an adequate record is so important in these cases is because in the absence of such a record, the court must apply the strong presumptions that counsel's performance was a part of trial strategy, and typically will not second-guess a matter of trial strategy. *Young*, 991 S.W.2d at 837; *Stone*, 17 S.W.3d at 350.

 There was a timely motion for new trial filed in this case. However, the motion did not assert ineffective assistance of counsel as grounds for granting a new trial. In fact, none of the grounds asserted required an evidentiary hearing, and we find no record that a hearing was ever held. The motion for new trial was overruled by operation of law. We are without evidence of what defense counsel's trial strategy might have been. We cannot "second-guess trial counsel's tactical decisions which do not fall below the objective standard of reasonableness." *Young*, 991 S.W.2d at 837–38; *Vasquez v. State*, 830 S.W.2d 948, 950–51 (Tex.Crim.App.1992). All we can do is determine from the record before us if the complained-of actions "fall below the objective standard of reasonableness." *Id.* Where the record before us affirmatively demonstrates that counsel took some action in defending his client that no reasonably competent attorney could have believed constituted sound trial strategy, the defendant has shown he received ineffective assistance of counsel. *Stone*, 17 S.W.3d at 353; *Campbell v. State*, 2 S.W.3d 729, 734 (Tex.App.—Houston [14th Dist.] 1999, pet. granted on other grounds)("[I]f silent record clearly indicates no reasonable attorney could have made such trial decisions, to hold counsel ineffective is not speculation.").

Here, the record shows that appellant's trial counsel mounted a vigorous defense. Not only did he attempt to show that the victim had a consensual sexual encounter with appellant, he also attempted to show that the two men the victim was hoping to see in La Villa that night had both opportunity and motive to murder her. Fur-

thermore, there is no indication in the record before us that the two consents given by appellant allowing police to search his home were anything but voluntarily and knowingly given. Based on the record before us, we conclude that appellant did not receive ineffective assistance of counsel during trial. Appellant's second issue is overruled.

The judgment of the trial court is affirmed.