

**NUMBER 13-07-00264-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ADRIAN RIOS,**                                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                              **Appellee.**

---

### On appeal from the 94th District Court
### of Nueces County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Garza

Appellant, Adrian Rios, was convicted on two counts of arson causing bodily injury, a first-degree felony.  *See* TEX. PENAL CODE ANN. § 28.02(a)(2)(A), (d)(1) (Vernon Supp. 2007).  The trial court sentenced Rios, a habitual felony offender, to forty years' confinement on each count, with the sentences to run concurrently.  Rios now appeals, contending that:  (1) the evidence was insufficient to establish that the offense occurred within the limits of an incorporated city or town; (2) the evidence was insufficient to establish that Rios knew that the offense occurred within the limits of an incorporated city or town; and (3) he received ineffective assistance of counsel.  We affirm.

## I. BACKGROUND

On July 15, 2006, Crystal Salinas and Jessica Sanchez visited a nightclub in Corpus Christi, Texas, where they became involved in an altercation with Rosanna Torres Juarez and Terry Garza. Afterward, Salinas and Sanchez went to their residence at 2107 Shirley Street in Corpus Christi, where they lived with Andres Ybanez, Ybanez's four siblings, Ybanez's mother, and Salinas's children. Juarez and Garza returned to Garza's house. At the time, Juarez was Rios's girlfriend and Garza was the girlfriend of Ernesto Gonzalez. Gonzalez had previously resided with the Ybanezes at another address.

The following evening, Juarez borrowed her mother's truck and drove to a "game room" in Odem, Texas with Rios, Gonzalez, Garza, Angel Moreno and Sam Rodriguez. While there, Moreno overheard Juarez, Rios, Gonzalez and Garza discussing the fight that occurred the night before. Moreno also heard Rios and Gonzalez discuss their intent to "kick some guy's ass." The group returned to Garza's residence at around midnight, at which point Juarez, Garza, and Moreno entered the house while Rios, Gonzalez, and Rodriguez remained outside the house talking. At some point, Juarez took two Xanax pills. She subsequently went outside and overheard Rios, Gonzalez and Rodriguez, express their desire to "cocktail" the Ybanez house. According to Moreno, Rios came into the house and asked to borrow keys to Juarez's mother's truck to "take care of some business." Juarez and Moreno then saw Rios, Gonzalez, Rodriguez, and another man, "Gordo," get into the truck and drive away.

Meanwhile, Ybanez, Ybanez's sister Dina Limon, Sanchez, and Chelsea Rudisell were returning to the Shirley Street residence in Ybanez's white Chevrolet Malibu. Ybanez was driving, Rudisell was in the front passenger seat, and Limon and Sanchez were in the rear passenger seats. As Ybanez pulled into the driveway of the Shirley Street residence, Rudisell observed several men in the bed of a pickup truck approximately four houses away. According to Rudisell, the men were holding something on fire in their hands. Rudisell alerted the other passengers, who all looked up. Sanchez saw three bald men in

muscle shirts holding "flames." The truck started moving slowly toward the Malibu, at which point Limon noticed that one of the men in the truck bed had "EME" tattooed on his arm; she recognized this tattoo as Gonzalez's.

Four of the "flames," which were in fact Molotov cocktails, were then thrown in the direction of the Malibu. One came in through the passenger window and landed on Ybanez's lap, setting both Ybanez and the car ablaze. At least one other Molotov cocktail struck the Malibu. Although Sanchez, Rudisell and Limon were able to evacuate the inferno, Ybanez's safety belt would not unbuckle.

Salinas and her children were sleeping inside the Shirley Street house when Salinas heard a noise followed by screams and saw a flash of light through the window. Salinas opened the front door to see Ybanez's Malibu engulfed in flames, with Ybanez still inside. Eventually, Rudisell was able to unbuckle Ybanez's safety belt, at which point others pulled him out of the car and sprayed him with water.

Mario Olivarez, an officer with the Corpus Christi Police Department ("CCPD"), was dispatched to Shirley Street where he saw the Malibu still smoldering. He observed what appeared to be human skin next to the vehicle. Also, shards of brown glass were found in the Malibu and strewn on the driveway and street. George Alvarez, another CCPD officer, also responded to the scene. Officer Alvarez interviewed Limon, who could not identify or describe any suspects for him. However, Officer Alvarez did receive a description of the truck from which the incendiary projectiles were thrown.

After Rudisell and Ybanez were taken to the hospital, CCPD Detective Guadalupe Rodriguez arrived at the scene, where she interviewed Sanchez and Limon, who were reluctant to provide any information. Detective Rodriguez then visited Rudisell in the hospital, but Rudisell was under heavy sedation and could not provide any information. Detective Rodriguez returned to Shirley Street, where Sanchez and Limon were more forthcoming, describing whom they thought was involved in the attack.

Rudisell suffered burns on her face, neck, arm and hand, and was hospitalized for

four to five days. Ybanez suffered severe burns on nearly fifty percent of his body, and lost large portions of skin from his stomach, chest, arms, legs and face. He was later transferred to Brooks Army Medical Center in San Antonio.

Juarez did not volunteer any information to the police at first, but she was contacted by the police several weeks after the incident. She stated that she was taking three prescription medications for bipolar disorder and that she had been hospitalized previously because of the disorder. Xanax was not one of those prescribed medicines. Juarez told police that Rios, Gonzalez, Rodriguez, and Gordo had borrowed her mother's truck on the night in question. Juarez told police that when the men returned, she asked Rios what had happened, but Rios would not answer. Juarez testified at trial that when they returned, they were acting "wound up" and told her that they had "cocktailed" Ybanez's car.

On September 28, 2006, a Nueces County grand jury indicted Rios, Gonzalez, and Garza on two counts of arson causing bodily injury. *See id.* Count one of the indictment stated in relevant part that the defendants:

> with intent to damage and destroy a VEHICLE [did] intentionally and knowingly START A FIRE to said VEHICLE by THROWING A CONTAINER OF ACCELLERANT [sic] THEN ABLAZE AT SAID VEHICLE, knowing it was within the limits of an incorporated city and town, namely, CORPUS CHRISTI, Texas, and that bodily injury was suffered by ANDRES YBANEZ by reason of the commission of said offense.[1]

On February 27, 2007, all three defendants were re-indicted. The amended indictment matched the original but also included allegations that Rios had two prior felony convictions and that Gonzalez had one prior felony conviction. *See id.* § 12.42(c)(1), (d) (Vernon Supp. 2007). After Garza's motion to sever was granted, the case proceeded to trial against Rios and Gonzalez.

At trial, Tommy Pleasant, a K-9 trainer with the State Fire Marshal's Office ("SFMO"), testified that he took a dog trained to find ignitable liquids to inspect Ybanez's Malibu. Because the dog alerted to the driver's side floorboard, Pleasant took a sample

---

[1] The indictment also included a second count, which was identical to the first count, except that it referenced the bodily injury suffered by Rudisell rather than Ybanez.

4

of the carpeting from that area. Jim Swindall, SFMO laboratory manager, testified that he analyzed the sample and detected the presence of ignitable liquids. SFMO Captain Mark Wagner testified that he investigated the scene of the fire and found remnants of a Molotov cocktail. Captain Wagner stated that the damage at the scene was typical of a Molotov cocktail attack.

Sylvia Torres, Juarez's mother, testified that Juarez had taken her green Chevrolet Silverado four-door pickup truck without her permission on July 16, 2006.[2] Torres stated that she called Juarez multiple times to find out where the truck was, eventually going to Garza's house in search of the truck. Torres testified that, as she arrived at Garza's house at around 1:00 a.m. on July 17, 2006, the Silverado was just pulling up to the house as well. Torres observed Rios, Gonzalez, Rodriguez, and a fourth man she did not recognize, exit the truck. At that point, Torres got into the truck and detected an odor of gasoline.

Also testifying for the State at trial was Kenneth Austin, an inmate at the Nueces County jail who became acquainted with fellow inmate Rios. Austin testified that he overheard an argument between Rios and another inmate, during which Rios said: "Hey, don't mess with me, I'm the fire bomber. I'm famous." Austin later heard Rios tell his cellmate: "We caught him at . . . Crosstown Greenwood. We just meant to scare him . . . I didn't know his window was down." Austin also testified that, sometime later, he heard Rios again say: "Yeah, I'm the fire bomber. They got me here. I'm famous."

Neither Rios nor Gonzalez called any witnesses to testify at trial.

On March 28, 2007, the jury found Rios and Gonzalez guilty on both counts. Rios pleaded "true" to the allegations contained in the enhancement paragraph of the second indictment. Subsequently, the trial court sentenced him to forty years' confinement in the Institutional Division of the Texas Department of Criminal Justice on each count, with the sentences to run concurrently. Rios did not file a motion for new trial, but timely filed his

---

[2] Juarez claimed that she had permission from her mother to borrow the truck.

5

notice of appeal on April 17, 2007.[3]  This appeal ensued.

## II. Discussion

### A.    Evidentiary Sufficiency

By his second issue,[4] Rios contends that there was insufficient evidence to show that he knew that the offense was committed within the city limits of Corpus Christi.

### 1.    Standard of Review

When reviewing the legal sufficiency of evidence, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Watson v. State*, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006).  The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 2005); *Jackson*, 443 U.S. at 318-39; *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).  We do not reevaluate the weight and credibility of the evidence, whether circumstantial or direct, nor do we substitute our own judgment for that of the trier of fact.  *Beckham*, 29 S.W.3d at 151.  Instead, we consider whether the jury reached a rational decision.  *Id.*

In a factual sufficiency review, we view all the evidence in a neutral light, favoring neither party.  *Watson*, 204 S.W.3d at 414; *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask:  (1) whether the evidence supporting the conviction is so weak that the fact-finder's determination is clearly wrong and manifestly unjust; or (2) whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust.  *Watson*, 204 S.W.3d at 414-15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great

---

[3] On March 19, 2007, the trial court signed a certification of Rios's right to appeal.  *See* TEX. R. APP. P. 25.2(a)(2), (d).  Gonzalez is not a party to this appeal.

[4] We address Rios's issues out of order in the interest of convenience.

weight and preponderance of all the evidence contradicts the verdict. *Watson*, 204 S.W.3d at 417. A factual sufficiency review requires the reviewing court to consider all of the evidence. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

### 2. Analysis

Section 28.02 of the Texas Penal Code provides in relevant part as follows:

A person commits an offense if the person starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage:

. . .

(2) any building, habitation, or vehicle:

(A) knowing that it is within the limits of an incorporated city or town . . . .

TEX. PENAL CODE ANN. § 28.02.

Rios does not challenge the sufficiency of the evidence showing that he started a fire with intent to cause damage to a vehicle. He merely contends that there was no evidence showing that he knew the vehicle was "within the limits of an incorporated city or town." We disagree.

When knowledge of the defendant must be established, it can be shown by independent facts and circumstances indicative of such knowledge. *Mouton v. State*, 627 S.W.2d 765, 768 (Tex. App.–Houston [1st Dist.] 1981, no pet.). In *Mouton*, the court found independent facts and circumstances sufficient to show that defendant knew the vehicle he set fire to was located within an incorporated city. *Id.* Specifically, the court noted that:

[t]he State established that the appellant had lived in the incorporated area of Houston where the offense occurred when he was between the ages of seven and twelve; that his girlfriend's brother lived in the neighborhood; that the appellant's brother, the complainant, lived in the neighborhood[;] and that the appellant himself had lived at his brother's house where the offense occurred for a few months in 1978.

*Id.*; *see Bella v. State*, 792 S.W.2d 542, 545 (Tex. App.–El Paso 1990, no pet.) (finding that a jury could have rationally concluded that the defendant knew the building she set fire to was located within an incorporated city, based partly on "the common knowledge

7

characteristics of the described location").

Here, independent facts and circumstances provided a rational basis for the jury to have concluded that Rios knew the vehicle he set fire to was located in Corpus Christi. For example, the evidence established that Rios was living in Corpus Christi at the time of the events in question. Sanchez identified the 2107 Shirley Street residence on an aerial photograph of the area that was introduced as the State's exhibit number one; the photograph showed that the house was located in a dense residential neighborhood with utility lines, swimming pools, and street lights clearly visible. Juarez testified that she, Rios, Gonzalez, and Garza drove back "from Odem to Corpus" on the night in question. She further testified that, after Rios and Gonzalez left with the keys to her mother's truck, they returned 45 minutes later. Austin testified that he overheard Rios say: "We caught him at . . . Crosstown Greenwood." This constituted some evidence that Rios was familiar with the city.

Viewing the evidence in the light most favorable to the prosecution, *see Watson*, 204 S.W.3d at 414-17, we find that a rational trier of fact could have found beyond a reasonable doubt that Rios knew the crime took place within the city limits of Corpus Christi. *See Mouton*, 627 S.W.2d at 768. Accordingly, there was legally sufficient evidence to support the verdict. *See Beckham*, 29 S.W.3d at 151. Moreover, the jury's conclusion was not clearly wrong, manifestly unjust, or against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414-15, 417. Rios's second issue is overruled.

## B. "Incorporated City or Town"

By his first issue, Rios contends that there was legally and factually insufficient evidence adduced at trial to show that Corpus Christi is an "incorporated city or town." Rios is correct that there was no evidence adduced at trial regarding the incorporation of Corpus Christi. However, a court may take judicial notice that a city or town is incorporated. *See Gonzalez v. State*, 723 S.W.2d 746, 750-51 (Tex. Crim. App. 1987); *see*

8

*also* TEX. LOC. GOV'T CODE ANN. § 9.008(b) (Vernon 2008) ("Recorded charters or amendments are public acts. Courts shall take judicial notice of them, and no proof is required of their provisions.").

In *Gonzalez*, the court of criminal appeals considered whether a conviction could be based upon an indictment that failed to state that San Antonio, the city within which the alleged offense was committed, was incorporated. The court found that the incorporation of the city was susceptible to judicial notice because "its existence is so easily determinable with certainty from sources considered reliable, it would not be good sense to require formal proof." *Gonzalez*, 723 S.W.2d at 751 (citing 1 ROY R. RAY, TEXAS PRACTICE: TEXAS LAW OF CIVIL AND CRIMINAL EVIDENCE, § 151, at 193 (3d ed. 1980)). Therefore, the court held that the omission of an allegation of the fact of incorporation was not fatal to the indictment. *Id.* at 752.

Here, unlike in *Gonzalez*, the indictment included sufficient allegations as to the incorporation of the city. We are instead asked whether a lack of evidence of incorporation bars a conviction under section 28.02(2)(A) of the penal code. We hold that it does not, because such a fact is capable of being judicially noticed. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." TEX. R. EVID. 201(b). The United States Census Bureau website provides a list of incorporated cities in Texas. *See* U.S. Census Bureau, "Table 4: Annual Estimates of the Population for Incorporated Places in Texas, Listed Alphabetically: April 1, 2000 to July 1, 2007," *available at* http://www.census.gov/popest/cities/SUB-EST2007-4.html (last visited Aug. 22, 2008). The city of Corpus Christi is listed as an incorporated city. *Id.* Therefore, we may take judicial notice of the fact that Corpus Christi is incorporated. *See Payan v. State*, 199 S.W.3d 380, 383 n.4 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd) (taking judicial notice that the city of Brookshire is incorporated because it is included on the Census

9

Bureau list); *see also Hayden v. State*, 155 S.W.3d 640, 647 (Tex. App.–Eastland 2005, pet. ref'd) (taking judicial notice of information found on website); *Fullylove v. State*, No. 13-00-169-CR, 2001 Tex. App. LEXIS 8009, at *5-6 (Tex. App.–Corpus Christi Nov. 29, 2001) (not designated for publication) (taking judicial notice that the offense of murder is a felony although no evidence was produced as to that fact).

Because we may take judicial notice that a particular city is incorporated and because we take notice that Corpus Christi is an incorporated city, we hold that it was not necessary that the State present evidence to prove that Corpus Christi was incorporated. *See Payan*, 199 S.W.3d at 383. Accordingly, Rios's first issue is overruled.

## C.    Ineffective Assistance of Counsel

By his third issue, Rios contends that the failure of his trial counsel to request an accomplice witness jury instruction with respect to Juarez's testimony amounted to ineffective assistance of counsel. We disagree.

### 1.    Standard of Review

To establish a claim for ineffective assistance of counsel, Rios must show: (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 684 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.). Whether this test has been met is to be judged on appeal by the totality of the representation, not by any isolated acts or omissions. *Jaynes*, 216 S.W.3d at 851. The burden is on the appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Id.*

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if the appellant overcomes the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851. The acts or omissions that form

10

the basis of appellant's claim of ineffective assistance must be evidenced by the record. *See Thompson v. State*, 9 S.W.2d 808, 814 (Tex. Crim. App. 1999); *Jaynes*, 216 S.W.3d at 851. In most cases, a silent record which provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d at 813-14. "These demanding standards are virtually impossible to meet when no proper evidentiary record was developed at a hearing on a motion for new trial." *Chavero v. State*, 36 S.W.3d 688, 701 (Tex. App.–Corpus Christi 2001, no pet.). As the court of criminal appeals has noted:

> A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel.

*Thompson*, 9 S.W.3d at 813-14 (footnote omitted).

### 2. Analysis

As previously noted, Juarez testified at trial that she heard Rios and Gonzalez saying they were going to "cocktail the house" before they left in her mother's truck. On cross-examination, Rios's trial counsel asked Juarez whether Rios had gone into Garza's house to ask for the keys to Juarez's mother's truck. The following exchange then occurred:

> Q. [Rios's counsel] Adrian, you say, goes back into the house and asks to borrow the keys?
>
> A. [Juarez] Yes.
>
> Q. So you give him the keys?
>
> A. Yes.
>
> Q. Well, doesn't that make you a party to this offense, too? You're helping them to do all of this, whatever they're going to do?
>
> A. How does that make me possible [sic] of being with them?

11

Q.          Well, you've given them the keys to go do this crime. You're helping them, aren't you?

A.          I don't completely say it's – that I'm helping them.

Q.          Well, you gave them the keys and you knew – what you're testifying to, you knew what they were going to do –

THE COURT:     Is that a question?

Q. [Rios's counsel]  – isn't that correct?

A.          Yes.

Q.          Okay.  Have you been indicted?

A.          No.

Q.          And you haven't been charged with this crime, have you?

A.          I don't see why I should.

Rios contends that this testimony by Juarez, along with her statement that Rios and Gonzalez had told her they were going to "cocktail" Ybanez's house, constituted an "admission" by Juarez that she had participated in the crime as an accomplice.  *See Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007) ("An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state.").  Moreover, Rios claims that since Juarez's "admission" was uncontroverted, "she should be considered an accomplice as a matter of law and the jury should have been instructed accordingly."  *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005);[5] *Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998) (stating that, if there exists no doubt or the evidence clearly shows that a witness is an accomplice witness as a matter of law, the court is under a duty to so instruct the jury.);

---

[5] Article 38.14 of the Texas Code of Criminal Procedure provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."  TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005).

*DeBlanc v. State*, 799 S.W.2d 701, 708 (Tex. Crim. App. 1990) (same). "Alternatively," asserts Rios, "the jury should have been instructed to decide the issue." *See Blake*, 971 S.W.2d at 455 ("If the evidence is conflicting, it is proper to leave the question of whether an inculpatory witness is an accomplice witness as a matter of fact to the jury under instructions defining the term accomplice."). Rios states that his trial counsel's failure to request such an instruction amounted to ineffective assistance of counsel.

We note that Juarez's statement at trial was far from a clear "admission" that she had participated in the crime as an accomplice. However, even if counsel erred in failing to request an accomplice witness instruction, we do not judge counsel's performance by any isolated acts or omissions; rather, we look at the totality of the representation. *Jaynes*, 216 S.W.3d at 851. Because the record does not indicate why Rios's trial counsel declined to ask for an accomplice witness instruction, we cannot say that the "strong presumption" of reasonable assistance has been overcome. *See Mallett*, 65 S.W.3d at 63.

We conclude that Rios has not met his burden to show by a preponderance of the evidence that his counsel was ineffective. *See Jaynes*, 216 S.W.3d at 851. Accordingly, his third issue is overruled.

## III. CONCLUSION

We affirm the judgment of the trial court.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 26th day of August, 2008.

13