

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-352-CR**
**NO. 2-09-185-CR**

JUAN ESCOBAR, JR.                                                        APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

In one point, Appellant Juan Escobar, Jr. challenges the legal sufficiency of the evidence to support his conviction for aggravated robbery. We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Escobar entered a Waffle House restaurant in Lewisville, Texas, on December 9, 2007, sat down, and ordered lunch. Catherine McNeace and her six-year-old daughter were sitting nearby eating lunch as well. As Escobar was leaving, he walked behind McNeace, grabbed her purse, and ran out the door. McNeace pursued Escobar, grabbed at his jacket, and yelled, "Don't take my purse." Escobar pushed McNeace to the ground and ran away from the Waffle House. The restaurant's cook and another customer pursued Escobar as one of the waitresses called 9-1-1.

At this time, Juan Brown was approaching the Waffle House in his truck and saw Escobar running with a purse as the two men chased him. Believing that a crime was being committed, Brown pulled his truck into a nearby parking lot and intercepted Escobar. According to Brown, when he jumped out of his truck, Escobar "brandished" a "knife." Brown testified that Escobar "moved" the knife threateningly: "He let me know he had the knife." Brown also said that he "had no doubt" Escobar was intending to use the knife. Brown further said that he thought Escobar "was going to attack me, because . . . I was there to stop him." Brown said he believed Escobar was going to cut him and that he "felt [his] life was threatened." In response, Brown reached into his truck, grabbed a large metal pipe, and told Escobar, "It's a fair fight now." Escobar allegedly declared "[D]amn," threw the purse, and ran away.

2

Although the record does not state the physical proximity between Brown and Escobar in terms of feet or inches, on three separate occasions during trial Brown demonstrated before the trial judge and the jury where he stood in relation to Escobar when Escobar exhibited the knife. Using an ink pen, Brown also demonstrated how Escobar motioned the knife at Brown.

Daniel Martinez testified that he was on his way to get a haircut when Escobar asked for a ride. Although Martinez said no, Escobar got into the backseat. Escobar eventually got out and surrendered to police. Officer Duk Lee arrested Escobar and took him to the Waffle House, where McNeace identified him as the assailant.

At trial, officer Stephen Shaffer testified that he recovered a "blue-handled box-cutter style knife" from the backseat of Martinez's truck. Shaffer said that the knife was "certainly" capable of causing death or serious bodily injury. According to Shaffer, the box cutter qualified as a deadly weapon and a person would feel threatened if someone pointed the box cutter at him. A second officer, Michael Larkin, also testified that based on his experience, the box cutter could "most definitely" be used as a deadly weapon and was capable of causing serious bodily injury or death.

The State charged Escobar with one count of robbery with McNeace as the alleged victim and two counts of aggravated robbery—one count with Bobby Watkins as the alleged victim and the other with Brown as the alleged victim. The count with Watkins as the victim was dismissed prior to trial. A jury found Escobar guilty of

3

robbery as to McNeace and aggravated robbery as to Brown. The jury assessed punishment at fifty years' incarceration for the robbery and seventy years' incarceration for the aggravated robbery. The sentences are set to run concurrently. This appeal followed.

### III. LEGAL SUFFICIENCY OF ESCOBAR'S AGGRAVATED ROBBERY CONVICTION

In his sole point, Escobar argues that the evidence is "insufficient" to support his conviction for aggravated robbery. Specifically, Escobar argues that the evidence is insufficient to establish that Brown was in fear of imminent bodily injury or death or that the box cutter was a deadly weapon. Escobar does not discuss in his brief a separate issue pertaining to factual sufficiency of the evidence, nor does he discuss the applicable standard, analyze any disputed material facts, or attempt to explain why the evidence supporting his conviction is factually insufficient. And Escobar asked only that this court render "an acquittal." Thus, Escobar has not properly raised a factual sufficiency point, and we will conduct only a legal sufficiency review. *See Cardenas v. State*, 30 S.W.3d 384, 386 n.2 (Tex. Crim. App. 2000) (conducting only a legal sufficiency review when appellant made no reference to the factual sufficiency of the evidence nor the applicable standard); *Chavero v. State*, 36 S.W.3d 688, 693 (Tex. App.—Corpus Christi 2001, no pet.) (en banc) (conducting only a legal sufficiency review when defendant argued only that his "conviction should be vacated and a judgment of acquittal entered because there was

4

insufficient evidence to establish all of the necessary elements" of the offense but failed to reference factual sufficiency or the applicable standard of review).

## A. Legal Sufficiency Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

## B. Applicable Law

The State is required to prove every element of an offense beyond a reasonable doubt. *See* Tex. Penal Code Ann. § 2.01 (Vernon 2003). The penal code describes robbery under section 29.02 as follows:

(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31[2] and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

*Id.* § 29.02(a) (Vernon 2003).

---

[2] Under section 31.03, theft is defined as "unlawfully appropriat[ing] property with intent to deprive the owner of property." Tex. Penal Code Ann. § 31.03 (Vernon Supp. 2009).

Penal code section 29.01 defines the phrase "[i]n the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *See id.* § 29.01 (Vernon 2003). Thus, proof of a completed theft is not required to establish robbery. *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996), *cert. denied*, 544 U.S. 1037; *see also Purser v. State*, 902 S.W.2d 641, 647 (Tex. App.—El Paso 1995, pet. ref'd), *cert. denied*, 525 U.S. 838 (1998) (stating that the actual commission of theft "is not a prerequisite" for robbery, as the "gravamen of robbery is the assaultive conduct and not the theft").

Because robbery is a form of assault, the allowable unit of prosecution for robbery (for double jeopardy purposes) is the same as that for an assault, and in Texas the allowable unit of prosecution for an assaultive offense is each victim. *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999). Thus, even though only one attempted theft might occur, the State can prosecute a defendant for multiple robberies that stem from that single attempted theft when there are multiple assault victims. *Ex parte Padron*, 16 S.W.3d 31, 34 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

Under section 29.03, aggravated robbery occurs when a person commits robbery as defined in section 29.02 and (1) causes serious bodily injury to another or (2) uses or exhibits a deadly weapon. *See* Tex. Penal Code Ann. § 29.03 (Vernon 2003).

6

The penal code defines "[d]eadly weapon" as

> (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or
>
> (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

*Id.* § 1.07(a)(17) (Vernon Supp. 2009). Factors that a jury may consider in determining whether an object used in the commission of a theft is a deadly weapon include (1) words of the accused, (2) the intended use of the weapon, (3) the size and shape of the weapon, (4) testimony by the victim that he feared death or serious bodily injury, (5) the severity of wounds—if inflicted, (6) the manner in which the assailant allegedly used the object, (7) physical proximity of the parties, and (8) testimony as to the weapon's potential for causing death or serious bodily injury. *See Brown v. State*, 716 S.W.2d 939, 946–47 (Tex. Crim. App. 1986) (discussing factors used to determine whether an object qualifies as a deadly weapon); *see also Bui v. State*, 964 S.W.2d 335, 341–42 (Tex. App.—Texarkana 1998, pet. ref'd.) (same).

### C.    Legal Sufficiency Analysis

In this case, the State provided evidence of Escobar's acts toward Brown during Escobar's immediate flight from the Waffle House after he had absconded with McNeace's purse and pushed her to the ground. The State offered testimony by Brown that Escobar had "brandished" the box cutter and that Escobar "let [Brown] know he had the knife." Brown also testified that Escobar made it clear that he

intended to use the box cutter on Brown because Brown attempted to stop Escobar. Brown said that he feared Escobar "was going to attack" him, that he believed that Escobar was going to cut him, and that he feared for his life. Ultimately, Brown demonstrated his encounter with Escobar before both the trial judge and the jury, allowing both the judge and the jury to thoroughly familiarize themselves with the distance between Brown and Escobar and to also grasp the manner in which Escobar exhibited the weapon toward Brown.

Additionally, the State introduced multiple pictures of the box cutter and displayed them to the jury. Furthermore, two police officers testified that the box cutter was capable of causing death or serious bodily harm. *See Bui*, 964 S.W.2d at 341–42.

Viewing the evidence in a light most favorable to the prosecution, the jury could have found beyond a reasonable doubt that, "in immediate flight after the attempt or commission of theft," Escobar intentionally or knowingly placed Brown in fear of imminent bodily injury or death when he displayed the box cutter toward Brown. *See* Tex. Penal Code Ann. §§ 29.01(1), 29.02(a)(2), 29.03(2). We hold that the evidence is legally sufficient to support Escobar's conviction for aggravated robbery. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Thus, we overrule Escobar's sole point.

## IV. CONCLUSION

8

Having overruled Escobar's sole point, we affirm the trial court's judgment pertaining to Escobar's aggravated robbery conviction in cause no. 02-08-00352-CR. Because Escobar does not challenge his robbery conviction, we also affirm the trial court's judgment pertaining to Escobar's robbery conviction in cause no. 02-09-00185-CR.

BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 15, 2010

9