

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-066-CR**

MICHAEL KENNEDY                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

A jury found Appellant Michael Kennedy guilty of second-degree felony possession of a controlled substance, methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.115(c) (Vernon 2003). The jury assessed punishment at twenty years' confinement and a $10,000.00 fine. The trial court sentenced Kennedy accordingly. In two issues, Kennedy argues that the trial court

---

[1] *See* Tex. R. App. P. 47.4.

improperly admitted the testimony of an incompetent witness and that the evidence was insufficient to prove that Kennedy possessed methamphetamine. We will affirm.

## II. BACKGROUND

On April 5, 2007, police arrested Kennedy on an outstanding warrant. The next day, Alicia Graham called the police claiming that Kennedy had called her from jail and told her that he had discarded "some methamphetamine" in the area where he was arrested. The jail routinely tracks and records inmate phone calls using a personal identification number (PIN).

Denton police investigator Frank Padgett obtained copies of and listened to phone calls from the jail that were made using Kennedy's PIN. Phone calls were made under Kennedy's PIN to Graham's phone number. In one of the calls, a male voice states that he "got real lucky" when he threw "something" that "look[ed] like a piece of white pipe . . . rolled up tight . . . caddy corner [to the corner where Kennedy was arrested]." Based on these calls, Denton police investigators went to the intersection of Panhandle and Ector Streets—the intersection described by the male voice in the phone conversations—and found a small package wrapped in tape. The contents of the package included a plastic baggie wrapped in tape with contents that tested positive for methamphetamine, weighing just under two grams. One of the investigators

2

testified that the package was found roughly forty-one feet from where Kennedy was arrested the previous day.

Before testifying at trial, defense counsel took Graham on voir dire to determine whether she was competent to be a witness—arguing that Graham was mentally ill due to her diagnosed bipolar disorder and the medications she took in treating the disorder. The trial court ruled Graham competent to testify. Graham stated that she had called the police prior to "set[ting Kennedy] up." She also said that it was fair to characterize her attempts to facilitate Kennedy's incarceration as a way to terminate her extramarital relationship with him. After hearing the facts and testimony above, a jury convicted Kennedy of possession of a controlled substance. This appeal followed.

## III. DISCUSSION

In his first issue, Kennedy argues that the trial court abused its discretion by allowing Graham to testify. Kennedy argues that Graham was mentally incompetent to testify and that the trial court erroneously admitted the recorded phone calls through Graham's testimony.

### A. Competency of Witness

In part of his first issue, Kennedy argues that the record shows that Graham was incompetent to testify because of her diagnosed bipolar disorder and the side effects of the medications she took treating her disorder. Thus,

3

Kennedy argues, the trial court abused its discretion by allowing Graham to testify.

As a general rule, every person is presumed competent to testify. Tex. R. Evid. 601(a); *Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995), *cert. denied*, 519 U.S. 826 (1996). But persons who, in the opinion of the trial court, "are in an insane condition of mind at the time when they are offered as a witness, or who . . . were in that condition when the events happened of which they are called to testify," are incompetent to testify. Tex. R. Evid. 601(a)(1). In determining whether a witness is competent to testify, the trial court should consider whether the witness has the competence to observe intelligently the events in question at the time of their occurrence, the capacity to recollect the events, and the capacity to narrate them. *See Lewis v. State*, 126 S.W.3d 572, 576 (Tex. App.—Texarkana 2004, pet. ref'd) (citing *Watson v. State*, 596 S.W.2d 867, 870–71 (Tex. Crim. App. 1980)).

When reviewing a ruling on a witness's competence to testify, we review the totality of the witness's testimony including the competency hearing and the trial. *Reyna v. State*, 797 S.W.2d 189, 191–92 (Tex. App.—Corpus Christi 1990, no pet.). We review a trial court's ruling concerning competency of a witness under an abuse of discretion standard. *See Broussard*, 910 S.W.2d at 960.

In this case, the trial court, the State, and defense counsel all questioned Graham outside the presence of the jury concerning her competency as a witness. Defense counsel and the State again questioned Graham in the presence of the jury. Graham testified that she was currently being treated for bipolar disorder—a condition that she has suffered "[o]ver ten years." Graham said that she had been treated by two different physicians continuously since she was nineteen and that she—at the time of trial and at the time of the events leading to Kennedy's arrest—took "eight prescriptions" to treat her disorder. Graham admitted that she had been institutionalized for her disorder "four or five" times and that she had attempted suicide on multiple occasions. Graham even testified to having "made a trip to California and just didn't know why."

Graham, however, also testified that despite her condition she was able to function in everyday life. Graham said that even with her disorder, she had earned a college degree in English and had successfully held a job as a substitute teacher. She also stated that she was married and had children and that it had "been years" since the last time she had experienced an episode with her bipolar disorder to a point that it disabled her from doing something.

In the presence of the jury, Graham was able to narrate how she had a long-term extramarital relationship with Kennedy. She was also able to

5

recollect the events surrounding her involvement with Kennedy's arrest. Graham testified that Kennedy had called her and told her where he had discarded methamphetamine and that she had called the police and relayed what Kennedy had told her. Graham's recollection of these events was corroborated by both the recorded calls and the investigators who testified that Graham had called the police relaying the information from the calls.

Focusing on Graham's bipolar disorder, the isolated episode of traveling to California, and her admitted suicide attempts, Kennedy claims that "the record clearly shows that [Graham's] . . . mental infirmities hinder her ability to form accurate impressions of events she sees and retain a clear recollection of them." But Kennedy does not point to any testimonial statement by Graham regarding the events that led to his arrest that demonstrates she did not fully recollect the event. Further, nothing in the record indicates that Graham was unable to observe intelligently the events surrounding her phone conversations with Kennedy that led to his arrest. In short, the record demonstrates that the trial court reasonably could have found that Graham was competent to testify. We overrule this portion of Kennedy's first issue.

In the remainder of his first issue, Kennedy argues that the phone recordings associated with his jail PIN were erroneously admitted under Graham's testimony. Kennedy does not cite to any authority nor does he

6

analyze any legal proposition for his position. *See* Tex. R. App. P. 38.1(i). Because this argument is within the section contesting the trial court's permitting Graham to testify, we interpret Kennedy's argument to be that the trial court erred by allowing the State to admit these phone calls based on Graham's alleged incompetency. Because we have overruled Kennedy's issue pertaining to the trial court's allowing Graham to testify, we also overrule the remainder of his first issue.

**B.      Sufficiency of the Evidence**

In part of his second issue, Kennedy argues that the evidence "at trial was legally and factually insufficient to prove [Kennedy] knowingly or intentionally possessed a controlled substance . . . ." Although Kennedy couches his challenge as both a legal and factual sufficiency challenge, he has not properly raised a factual sufficiency point of error.

This court has the authority to review factual sufficiency in criminal cases, but we may do so only if the issue is "properly raised." *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). A factual sufficiency point is properly raised only if it is specified in a separate point, sets out the proper standard of review, and analyzes why the facts fall short of that standard. *See id.; see also Patterson v. State*, 46 S.W.3d 294, 305 (Tex. App.—Fort Worth 2001, no pet.)*; Moon v. State*, 44 S.W.3d 589, 593 (Tex. App.—Fort Worth

7

2001, pet. ref'd). Kennedy does not discuss in his brief a separate issue pertaining to factual sufficiency of the evidence, nor does he discuss the applicable standard, analyze any disputed material facts, or attempt to explain why the evidence supporting his conviction is factually insufficient. Kennedy mentions "factual sufficiency" only once, and that is under his point heading "The Evidence Is Legally Insufficient . . . ." Because Kennedy has failed to properly raise a factual sufficiency point, we will conduct only a legal sufficiency review. *See Cardenas v. State*, 30 S.W.3d 384, 386 n.2 (Tex. Crim. App. 2000) (conducting only a legal sufficiency review when defendant, despite having requested "[i]n a single sentence at the conclusion of his [sufficiency of the evidence] point of error . . . that [the court] conduct a factual sufficiency review," otherwise made no reference to the factual sufficiency of the evidence nor the applicable standard); *Chavero v. State*, 36 S.W.3d 688, 693 (Tex. App.—Corpus Christi 2001, no pet.) (conducting only a legal sufficiency review when defendant argued only that his "conviction should be vacated and a judgment of acquittal entered because there was insufficient evidence to establish all of the necessary elements" of the offense but failed to reference factual sufficiency or the applicable standard of review).

### 1.    Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex.

9

Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik,* 953 S.W.2d at 240. We may not, however, affirm a conviction based on legal or factual grounds that were not submitted to the jury. *Malik*, 953 S.W.2d at 238 n.3. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

10

**2. Links**

To support a conviction for unlawful possession of a controlled substance, the State must link the accused to the contraband by proving that the accused (1) exercised control, management, or care over the contraband and (2) knew the substance he possessed was contraband. *See* Tex. Health & Safety Code Ann. §§ 481.002(38), 481.112(c); *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005); *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that he had knowledge of and control over it unless there are additional independent facts and circumstances which link him to the contraband. *Poindexter*, 153 S.W.3d at 406. That is, the evidence must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. *Id.* at 405–06; *Tucker v. State*, 183 S.W.3d 501, 510 (Tex. App.—Fort Worth 2005, no pet.).

Links can be proven by direct or circumstantial evidence. *Brown*, 911 S.W.2d at 747. Factors we consider include (1) Appellant's presence when the search warrant was executed, (2) whether the drugs were in plain view, (3) Appellant's proximity to and the accessibility of the drugs, (4) whether he was under the influence of narcotics when arrested, (5) whether he possessed other

11

contraband or narcotics when arrested, (6) whether he made incriminating statements when arrested, (7) whether he attempted to flee, (8) whether he made furtive gestures, (9) whether there was an odor of the contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether he owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether he was found with a large amount of cash, and (14) whether his conduct indicated a consciousness of guilt. *See Tucker*, 183 S.W.3d at 510.

The State only presented evidence on some of these factors. But the number of relevant factors is less significant than the logical force of the link they establish between the accused and the controlled substance. *See Hudson v. State*, 128 S.W.3d 367, 374 (Tex. App.—Texarkana 2004, no pet.). Links are established by the totality of the circumstances. *See Wootton v. State*, 132 S.W.3d 80, 87 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

Kennedy was initially arrested near Panhandle and Ector Streets in Denton. The day after his arrest, an inmate with a male voice and using Kennedy's PIN called Graham from jail. The caller told Graham that when he was arrested, "[T]here was something in [his] pocket but [he] threw it [away]," that it might still be there, that it was "rolled up with tape," and that it looked "like a piece of white pipe, it's rolled up tight." The caller described that what

12

he had thrown away would be near "the closest corner to that house [near Panhandle and Ector Streets]" and that it would be "caddy corner" from where he was arrested.

Despite explaining to Graham that he did not want to discuss what he had thrown away "on the phone," the caller asked Graham to "check on . . . that other" multiple times. After explaining how he had thrown "something" away, he told Graham, "I got real lucky, you know what I mean? Real lucky." During one of the calls, the caller explained how he was "dying," and Graham replied that she understood and that she was also "sweating, [] detoxing, and feeling [terrible]." In another call, the caller asked Graham, "[W]hat about that other?" When Graham explained that she had not looked for what the caller had thrown from his pocket because she did not want to "get in trouble with it," the caller replied "[Y]ou won't."

After listening to the phone conversations, investigators searched the area of Kennedy's arrest and located a small package wrapped in tape. The contents of the package tested positive for methamphetamine, weighing approximately two grams. The location where the methamphetamine was found was approximately forty-one feet from where Kennedy was arrested the previous day.

Based on the totality of the circumstances and viewing the evidence in the light most favorable to the verdict, we hold that there was legally sufficient evidence to support that a rational trier of fact could have found that Kennedy exercised care, custody, control, and management over the methamphetamine and that he knew the substance he possessed was contraband. *See Curry*, 30 S.W.3d at 406; *see also Tucker*, 183 S.W.3d at 510–11 (holding that proximity and drugs in plain view were sufficient to establish the necessary links). We overrule this part of Kennedy's second issue.

### C.    Corroboration Evidence of a Covert Agent

In the remainder of his second issue, Kennedy argues that the jury's verdict was based on the insufficiently corroborated testimony of a covert agent in contravention of Texas Code of Criminal Procedure article 38.141. *See* Tex. Code Crim. Proc. Ann. art. 38.141 (Vernon 2005). Kennedy argues that Graham believed she was working with the police to "set [him] up." Kennedy further argues that because Graham testified that she was able to terminate her extramarital affair with Kennedy by his incarceration, Graham was an informant for article 38.141 purposes because she had a "motive or hope for personal gain." *See Simmons v. State*, 205 S.W.3d 65, 72 (Tex. App.—Fort Worth 2006, no pet.). Thus, Kennedy argues, without Graham's testimony the

14

evidence is insufficient to support the jury's verdict under the covert-agent rule. *See Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

We will assume without deciding that article 38.141 applies to Graham and that she was an informant or covert witness working with the police for self-interested reasons. *See Cantelon v. State*, 85 S.W.3d 457, 460 (Tex. App.—Austin 2002, no pet.) (discussing who qualifies as a covert agent under article 38.141).

The standard for evaluating sufficiency of the evidence for corroboration under the accomplice-witness rule applies when evaluating sufficiency of the evidence for corroboration under the covert-agent rule. *Malone*, 253 S.W.3d at 258. When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). To meet the requirements of the rule, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself. *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999); *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). Rather, the evidence must simply link the accused in some way to the commission of the crime and show that "rational

15

jurors could conclude that this evidence sufficiently *tended* to connect [the accused] to the offense." *Hernandez v. State*, 939 S.W.2d 173, 179 (Tex. Crim. App. 1997) (emphasis original).

There is no set amount of nonaccomplice corroboration evidence that is required for sufficiency purposes; "[e]ach case must be judged on its own facts." *Gill*, 873 S.W.2d at 48. The court of criminal appeals has held that circumstances that are apparently insignificant may constitute sufficient evidence of corroboration. *Trevino*, 991 S.W.2d at 852. Additionally, the court of criminal appeals has stated that "[p]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984). But "mere presence alone of a defendant at the scene of a crime is insufficient to corroborate accomplice testimony." *Golden v. State*, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993) (citing *Meyers v. State*, 626 S.W.2d 778, 780 (Tex. Crim. App. 1982)).

In this case, even without Graham's testimony, jurors could have linked Kennedy to possession of the methamphetamine that the investigators found. The phone conversations that the jury heard were made from Kennedy's PIN.

16

The male voice in the phone conversations identified himself as Mike—Kennedy's first name is Michael. The male voice described how he had been arrested at the corner where the methamphetamine was found. The phone number called from Kennedy's PIN was Graham's. The woman's voice stated that she would call the Denton jail and inquire about "Michael Kennedy."

During the course of the phone conversations, the male voice described where and how he had thrown something away that looked "like a piece of white pipe" while he was being arrested in the area where investigators located a small package of methamphetamine wrapped in a plastic baggie with tape. Taken as a whole, the jury could have rationally found that the corroborating evidence tended to connect Kennedy to the methamphetamine found by the investigators. We overrule the remaining portion of Kennedy's second issue.

## IV. CONCLUSION

Having overruled both of Kennedy's issues, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 21, 2009